Argued and submitted October 13, 1999, decision of Court of Appeals and judgment of circuit court affirmed in part and reversed in part; case remanded to circuit court with instructions June 1, petition for reconsideration denied July 24, 2001

Darrell A. BENNETT,
*Petitioner / Respondent on Review,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation;
Farmers Insurance Exchange;
Truck Insurance Exchange; Fire Insurance Exchange;
Mid-Century Insurance Company;
Farmers New World Life Insurance Company;
and Farmers Group, Inc.,
aka Farmers Underwriters Association,
*Respondents / Petitioners on Review.*

(CC 9308-05432; CA A89477;
SC S45229 (Control), S45220)

26 P3d 785

Marc Zwerling, Portland, argued the cause for petitioner/respondent on review. With him on the briefs were Gary J. Lekas, P.C., and Jacqueline L. Koch, Portland.

James N. Westwood, of Miller, Nash, Wiener, Hager & Carlsen, LLP, Portland, argued the cause for respondents/petitioners on review. With him on the briefs were William H. Walters (Miller, Nash) and Craig D. Bachman, of Lane Powell Spears Lubersky, Portland.

Phil Goldsmith, John Paul Graff, and Richard S. Yugler, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Carson, Chief Justice, and Gillette, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. Leeson, Riggs, and De Muniz, JJ., did not participate in the consideration or decision of this case.

## KULONGOSKI, J.

Plaintiff brought this action against Farmers Insurance Companies (Farmers)[1] and Farmers's management company, Farmers Group, Inc. (FGI) (collectively, "defendants"), after Farmers terminated plaintiff's district manager appointment agreement. Plaintiff alleged tort claims for breach of fiduciary duty and breach of the duty of good faith and fair dealing against Farmers and FGI, and a claim for breach of contract against Farmers.[2] The jury found for plaintiff on each of those claims. After entering judgment in favor of plaintiff in accordance with the jury's verdict, the trial court entered judgment notwithstanding the verdict (JNOV) for defendants on all claims.[3] Alternatively, the trial court granted defendants' motion for a new trial on all claims. The Court of Appeals reversed the JNOV on plaintiff's contract claim and remanded that claim for a new trial, but affirmed the trial court's JNOV on plaintiff's tort claims. *Bennett v. Farmers Ins. Co.*, 150 Or App 63, 945 P2d 595 (1997). Plaintiff and defendants[4] petitioned for review, and we allowed both petitions.

On review, we are asked to resolve three issues: (1) whether the evidence was sufficient to support plaintiff's claim that his termination without good cause constituted a

---

[1] Farmers Insurance Companies in this case are: Farmers Insurance Exchange; Truck Insurance Exchange; Fire Insurance Exchange; Mid-Century Insurance Company; Farmers New World Life Insurance Company; and Farmers Insurance Company of Oregon. Those companies contracted with plaintiff for his services. We refer to the contracting defendants collectively as "Farmers."

[2] Plaintiff also brought a claim under the Oregon Racketeer Influenced and Corrupt Organizations Act, ORS 166.720 *et seq.*, alleging that defendants' conduct constituted unlawful racketeering. The trial court directed a verdict for defendants on that claim. That ruling was not at issue on appeal or on review.

[3] The jury awarded plaintiff $750,000 in damages on each tort claim. The jury also returned a verdict in plaintiff's favor on the contract claim, awarding $3.5 million in damages. Finally, after a subsequent trial, the jury awarded punitive damages against all defendants totaling $35 million.

[4] Because FGI prevailed on all its claims in the Court of Appeals, only defendant Farmers had an interest in petitioning for review. However, defendants have the same counsel and, according to the wording of the petition, the petition was filed on behalf of both Farmers and FGI.

breach of contract (based on plaintiff's theory that the parties had modified the at-will provision of the contract, or that Farmers had waived that provision, or that Farmers was estopped from relying on it); (2) if the evidence supports the breach of contract claim, then whether this court must remand the case for a new trial; and (3) whether a "special relationship" existed between plaintiff and defendants such that defendants could be liable to plaintiff in tort for breach of the duty of good faith and fair dealing or for breach of fiduciary duty. For the reasons set out below, we affirm the decision of the Court of Appeals reversing the trial court's JNOV on the contract claim and affirming the trial court's JNOV on the tort claims. However, we reverse the decision of the Court of Appeals remanding the case for a new trial on the contract claim, and we remand with instructions to the trial court to reinstate the judgment in accordance with the jury verdict on that claim.

## I. FACTS

On appeal after a judgment notwithstanding the verdict, we review the evidence in the light most favorable to the party who prevailed before the jury. *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977). We therefore review the record in this case in the light most favorable to plaintiff.

Plaintiff had been an insurance agent for Farmers in Roseburg, Oregon. In 1981, defendants asked plaintiff to become a district manager for Farmers in the Portland area, and plaintiff agreed.[5] Plaintiff signed a written "District Manager's Appointment Agreement" (agreement) with Farmers. Although FGI directed Farmers's operations and employed Farmers's management personnel, only Farmers contracted with plaintiff.

The agreement described the district manager's duties and compensation, and provided:

"This Agreement * * * may be canceled without cause by either the District Manager or [Farmers] on 30 days [sic] written notice."

[5] The district manager's responsibilities included recruiting, training, and supervising insurance agents who sold Farmers's insurance policies.

The agreement also provided:

> "Nothing contained [in the agreement] is intended or shall be construed to create the relationship of employer and employee. * * * No control is to be exercised by [Farmers] over the time when, the place where, or the manner in which the District Manager shall operate in carrying out the objectives of this Agreement provided only that they conform to normal good business practice * * *."

Finally, the agreement stated that the parties could make "no change, alteration or modification" of the agreement, "except as * * * evidenced by an agreement in writing signed by the District Manager and an authorized representative of [Farmers]."

Defendants regularly evaluated district managers' performance. Some of the factors affecting those evaluations were the number of new agents that the district manager had recruited and the number and types of policies that agents within the district had sold.

In 1985, Winter, plaintiff's regional sales manager,[6] and other FGI managers criticized plaintiff's performance as a district sales manager. That criticism centered around what Winter referred to as plaintiff's "poor performance in agency development." According to Winter, plaintiff had failed to recruit and train a sufficient number of new agents. Winter informed plaintiff that he was expected to meet specific recruitment goals by the end of August 1985 and additional goals by the end of that year. In a letter describing those goals, Winter wrote:

> "Failure to attain any one of these goals will * * * result in us requesting your resignation or terminating your appointment agreement."

Winter also requested that plaintiff submit a detailed description of how he intended to meet his goals. Winter went on to list the additional expectations, including that plaintiff would provide a "weekly recruiting report" and that plaintiff would contact his prospective recruits every two weeks. The

---

[6] According to Farmers's organizational structure, several districts make up a. "division," several divisions make up a "region," and several regions make up a "zone."

parties referred to that agreement as plaintiff's "performance plan." Winter closed the letter about the performance plan by saying:

> "At this point, you will either make the goals that we established together and develop the habits necessary to be a successful district manager over the long haul, or we will have to replace you as a district manager. If you approach this in a positive manner and take advantage of the assistance that we can and will provide, you can attain the established goals. If you are unwilling or unable to put forth the effort necessary to attain these goals, you probably should not be a district manager. Your future is in your hands. We can help, but we can't do the job for you. Your own abilities and efforts will be the determinant factor as to whether you remain as a district manager * * *."

At Winter's request, plaintiff signed, dated, and returned the letter. According to plaintiff, after that performance plan was developed, defendants began to exercise increasing control over the manner in which he conducted his business.

Plaintiff nearly reached the goals that had been set for him in the 1985 performance plan. Farmers acknowledged plaintiff's success by giving him various awards. However, in 1992, a new group of regional managers placed plaintiff on another performance plan with new goals. That performance plan also was accompanied by exhortatory letters from defendants' managers, including statements such as, "you are responsible for your own destiny" and "as always, your ultimate destiny lies in your own hands." One year later, Farmers terminated its agreement with plaintiff, citing plaintiff's failure to meet stated goals and his management decisions on several specified occasions.

In August 1993, plaintiff filed the present action against defendants. Plaintiff alleged that defendants had encouraged him to give up his insurance agency to become a district manager and that, after he had built a successful business, defendants had established unreasonable performance goals and used other deceitful strategies to force him out of business and to reap the profits of the business that he had created.

Plaintiff introduced evidence at trial in support of those allegations. Colvard, the regional agency manager who worked under Winter and who attended the meetings to evaluate plaintiff, testified that plaintiff's 1985 performance plan was part of defendants' strategy to force plaintiff to resign. Colvard explained that his own success was evaluated based on the number of district managers that he could replace. According to Colvard, defendants benefitted from replacing district managers because the commission paid to new agents typically was lower than that paid to seasoned ones, and defendants would profit from the difference. Colvard further testified that he had been told that Farmers had to have good cause to terminate a district manager. Accordingly, to support plaintiff's termination, Colvard had had to document a "severe performance deficiency." Colvard also admitted that he had set out to obtain plaintiff's resignation or to document his performance deficiency by setting unreachable performance quotas.

Additional testimony from Meals, the manager under Colvard who worked directly with district managers, corroborated Colvard's testimony. Meals testified that he directly was responsible for executing defendants' plan to push plaintiff into resignation or to document plaintiff's performance failure. Meals testified that he had set out to demonstrate that plaintiff had failed to perform and that he had asked for plaintiff's resignation at least eight times in 1985. Meals also admitted that he had told plaintiff that, if plaintiff met the production goals, then plaintiff would remain a district manager. Additionally, Meals acknowledged that he had told plaintiff in writing that plaintiff's future as district manager was in plaintiff's own hands. Meals, like Colvard, understood that Farmers's agreement with plaintiff could not be terminated without good cause.

In addition to the testimony of those who worked directly with plaintiff, plaintiff offered the testimony of Bigley, Farmers's zone vice president at the time that Farmers terminated its agreement with plaintiff. Bigley was responsible for reviewing any employee's termination and ensuring that it was fair. Bigley testified that he had reviewed the reasons for plaintiff's termination and then had approved it. Bigley also testified that he believed that it was

"impossible" for Farmers to terminate a district manager without good cause.

Plaintiff testified that, throughout the time that he had served as a district manager, various representatives of Farmers had made clear to him that Farmers would terminate the agreement only if he "lied, cheated, or stole."

As noted above, the jury returned a verdict in plaintiff's favor on each of plaintiff's claims. After entering judgment on that verdict, the trial court granted defendants' motion for JNOV and, alternatively, for a new trial.

On plaintiff's appeal, the Court of Appeals affirmed the trial court's JNOV on the tort claims, but reversed the JNOV on the contract claim, holding that there was sufficient evidence that the parties had modified the agreement. *Bennett*, 150 Or App at 70. The Court of Appeals then affirmed the trial court's alternative order of a new trial because of error in the jury instructions. *Id.* at 73. A majority of the Court of Appeals also held that, in a new trial, plaintiff could not use estoppel as one of his legal theories in support of his contention that Farmers was not entitled to rely on the at-will provision of the agreement. *Id.* at 78. Four judges dissented in part. According to the dissenting judges, plaintiff was entitled to pursue his theory that Farmers was estopped from relying on the at-will provision. *Id.* at 86.

Plaintiff seeks reinstatement of the judgment in his favor. Farmers seeks review of the Court of Appeals' reversal of the JNOV on the contract claim.

## II. DISCUSSION

### A. *Contract Claim*

Plaintiff alleged that Farmers had breached its contract with him in three ways: (1) by exercising greater control over the time, place, and manner of his performance than the terms of the agreement permitted; (2) by imposing unreasonable performance criteria; and (3) by terminating his employment without good cause. However, plaintiff alleged that he incurred damages only as a result of the termination. Accordingly, the only allegation of breach that we consider is breach by termination without good cause.

Farmers does not argue on review that it had good cause to terminate its agreement with plaintiff. Rather, Farmers relies on the fact that the agreement expressly provided that plaintiff's employment was "at will." However, plaintiff contends that the at-will provision is not determinative of his breach-of-contract claim and that good cause was required to terminate his employment. He offered three alternative legal theories in support of that contention: (1) the parties had modified the agreement, both in writing and orally; (2) Farmers had waived the at-will provision; and (3) Farmers was estopped from asserting that it had the right to terminate the agreement without cause.

The trial court instructed the jury under each of plaintiff's three theories and, as noted, the jury decided that Farmers had breached its contract with plaintiff. The jury's verdict in favor of plaintiff on that claim did not specify the theory under which the jury had found that the at-will provision was inapplicable.

Farmers moved for JNOV, arguing that there was insufficient evidence to support the jury's verdict.[7] Farmers alternatively moved for a new trial on the grounds that: (1) the trial court erred in instructing the jury about contract modification; and (2) the trial court "instructed the jury on one or more theories [modification, waiver, or estoppel] which were not supported by the evidence." As noted, the trial court granted Farmers's motion for JNOV and the alternative motion for a new trial.

1. *Judgment Notwithstanding the Verdict (JNOV)*

On appeal after a JNOV, we must reinstate the jury verdict unless we can say affirmatively that there was no

---

[7] Farmers argued on appeal, but does not pursue on review, that the trial court appropriately granted the JNOV because, among other reasons, the agreement required that modifications be in writing and there was insufficient evidence of a written modification.

Our case law has recognized that the parties may modify a written contract orally even if the writing contains an express provision against nonwritten modifications. *See Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 241, 855 P2d 626 (1993) (common-law rule that written contract may be modified orally despite express provision to the contrary is valid except when superseded by statute). Accordingly, in this case, the jury could have found that the parties had modified the agreement orally despite the existence of the express provision requiring written modifications.

evidence to support it. *Jacobs*, 277 Or at 811. As noted above, the parties do not dispute that Farmers terminated the agreement without good cause; they dispute only whether the agreement required good cause for a termination. Accordingly, we begin our review by focusing on the evidence concerning the parties' alleged modification of the at-will provision of the agreement.

■ It is axiomatic that parties to a contract may modify that contract by mutual assent. *Florey v. Meeker*, 194 Or 257, 282, 240 P2d 1177 (1952). Such a modification must be supported by consideration. *Marnon v. Vaughan Motor Co., Inc.*, 184 Or 103, 156-57, 194 P2d 992 (1948).

■■ Mutual assent, or what historically was considered as the "meeting of the minds" requirement, may be expressed in words or inferred from the actions of the parties. *Gordon v. Curtis Brothers*, 119 Or 55, 62-63, 248 P 158 (1926). Whether a statement or act is a manifestation of assent to a modification is a question of fact for the jury. *See Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 657, 576 P2d 356 (1978) (jury decides if statements in employee handbook modify original employment contract).

■ The foregoing general rule notwithstanding, Farmers urges this court now to announce that, as a matter of law, a jury may not consider certain types of business communications as evidence in determining whether the parties to a written contract assented to a modification. Farmers would have this court include within that category of business communications a "shape up or ship out" letter, as it characterizes the letter that Winter sent to plaintiff in 1985, and unwritten company policies like its own stated policy not to terminate employment agreements without good cause. Farmers does not cite authority in support of that argument. Rather, it seems to argue in favor of a public policy exception to the rule established in this court's case law, set out *ante*, that any words or actions that tend to manifest assent are appropriate evidence of assent. According to Farmers, the proposed business communications exception would reinforce the importance of written contracts and would promote predictability in commerce. If those business communications cannot be considered evidence of a modification in this

case, Farmers argues, then the jury's verdict that Farmers assented to the modification of the agreement was not supported by sufficient evidence.

■ The holding that Farmers seeks would require us, despite the lack of any superseding statute, to reconsider this court's case law. We decline to do so because, ordinarily, the creation of law for reasons of public policy such as those advanced by Farmers in this case is a task assigned to the legislature, not to the courts.

In this case, the jury heard evidence not only of Winter's representations to plaintiff during the 1985 performance plan and of Farmers's stated company policy, but also of repeated, direct and indirect assurances to plaintiff that Farmers would not terminate the agreement absent good cause. In addition, the jury heard evidence that Farmers's managers falsely documented "good cause" grounds for plaintiff's termination, a fact that tended to establish that Farmers itself did not believe that it continued to have the right to rely on the at-will provision of the agreement. A reasonable juror could have concluded that the evidence was clear and convincing that Farmers had assented to the modification of the at-will agreement. *See Craswell v. Biggs*, 160 Or 547, 560, 86 P2d 71 (1939) (oral modification of written contract must be proved by clear and convincing evidence). There is no issue whether plaintiff assented to the modification. Therefore, we hold that the trial court erred in granting a JNOV for Farmers on the contract claim.[8]

We turn now to the question whether the case must be remanded for a new trial.

---

[8] On appeal, although not on review, Farmers also argued that there was no consideration for the asserted modification. The Court of Appeals held that the jury could have found that plaintiff's acceptance of heightened supervision and other involvement by Farmers was a sufficient *quid pro quo* for Farmers's agreement not to terminate the agreement without cause. *Bennett*, 150 Or App at 70.

On review, Farmers argues that plaintiff's acceptance of heightened supervision during the 1985 performance plan cannot constitute consideration for a *permanent* modification of the agreement. Farmers contends that the performance plan was temporary in nature and that, at the end of that performance plan, the parties were restored to their respective positions as defined in the original appointment agreement.

Farmers did not make that argument in the trial court. Therefore, it is not preserved, and we do not address it further here.

## 2. *New Trial*

In the alternative to the JNOV, the trial court granted Farmers's motion for a new trial on plaintiff's contract claim under ORCP 64 B(6),[9] citing errors in the jury instructions concerning contract modification. The trial court had instructed the jury as follows in regard to plaintiff's contract claim:

"A contract is a legally enforceable promise or set of promises.

"Plaintiff contends that the provisions of the appointment agreement concerning the parties' rights to terminate the agreement without cause was [sic] modified by the parties orally or in writing or by conduct of the parties during the term of the agreement. Plaintiff must prove any modification by clear and convincing evidence.

"Clear and convincing evidence is that which enables you to find the truth of the facts asserted is highly probable.

"Consideration is a necessary element for a valid modification. To form a valid modification, both parties must give consideration for the performance by the other party. Consideration consists of the accrual to one party of some right, interest, profit or benefit, or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other party.

"\* \* \* \* \*

"In determining the intent of the parties to a contract, you may consider conduct relating to disputed terms of the contract before any controversy arose."

The trial court ruled that it had erred: (1) in failing to instruct the jury "on the core requirement of 'mutual assent' "; (2) in failing to instruct the jury concerning the provision in the

---

[9] ORCP 64 B provides, in part:

"A former judgment may be set aside and a new trial granted \* \* \* on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

"\* \* \* \* \*

"B(6) Error in law occurring at the trial and objected to or excepted to by the party making the application."

agreement that any modification be in writing; and (3) in failing to provide the jury a special verdict form containing "interrogatories appropriate to the [modification] instructions." The Court of Appeals affirmed the trial court's order of a new trial on the contract claim on the basis of the trial court's failure to instruct the jury on the requirement of mutual assent for a valid modification of the agreement. *Bennett*, 150 Or App at 73.

At the outset of this discussion, we note that the parties disagree about the appropriate standard of appellate review of a new trial order based on jury instruction error. Farmers contends that we should follow the standard of review set out in *Goggan v. Consolidated Millinery Co.*, 242 Or 328, 332, 409 P2d 174 (1965), and affirm the order of a new trial "if the instructions are susceptible of any reasonable interpretation which would make them erroneous." Plaintiff argues that the appropriate standard of review of the trial court's order granting Farmers's motion for a new trial is for errors of law.

We agree with plaintiff. The standard of review described in this court's opinion in *Goggan* is appropriate when the instructional error at issue relates to misstatements of fact included in the jury instructions. The instructions at issue in *Goggan* advised the jury of the alternative ways in which it could find the defendant liable for negligence. *Id.* at 330. The phrasing of one instruction misstated the evidence that had been introduced at trial. *Id.* After trial, upon realizing its error, the trial court ruled that the erroneous assumption of fact that it had included in the jury instruction might have misled the jury. *Id.* at 330-31. The trial court accordingly ordered a new trial. *Id.* This court held that affirmance was appropriate "*under [those] circumstances.*" *Id.* at 332 (emphasis added).

Unlike the error at issue in *Goggan*, in this case, the error in the jury instructions identified by the trial court is one strictly of law. When the trial court's order of a new trial is based on an interpretation of the law, we review that order for errors of law. *See Hightower v. Paulson*, 277 Or 65, 69, 559 P2d 872 (1977) (if order of new trial based on erroneous conception of law, appellate court's duty is to reverse).

We turn, then, to the merits of plaintiff's argument that the trial court erred in granting a new trial, reviewing for errors of law. Plaintiff argues that the trial court erred in granting a new trial because: (1) Farmers did not preserve the asserted errors in the jury instructions on which the trial court based its ruling; and (2) the trial court's omission of a specific instruction concerning "mutual assent" was not an error of law because that requirement adequately was conveyed by the jury instructions given. We address the preservation argument first.

As noted above, an order for a new trial under ORCP 64 B(6) must be based on an "error of law * * * objected to or excepted to by the party making the application" that "materially" affects "the substantial rights" of that party. Plaintiff's first argument requires us to determine what constitutes a sufficient objection or exception under ORCP 64 B(6) when the asserted error of law is an error in the jury instructions, then to review the record to determine if Farmers complied with that requirement.

The parties in this case assume that the objection or exception required under ORCP 64 B(6) is the same as the objection or exception that would be required to preserve the asserted error for appellate review. As a result, the parties adopt the requirements set out in ORCP 59 H,[10] the rule concerning the steps that a party must take to preserve errors in jury instructions for review upon appeal, as the requirements for a proper objection to jury instructions for the purposes of moving for a new trial under ORCP 64 B(6). Under ORCP 59 H, to preserve an error in instructions *given to a jury* for appellate review, the aggrieved party must point out the error to the trial court, and a notation of that exception must

---

[10] ORCP 59 H provides, in part:

"[N]o instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction * * * shall import an exception in favor of the party against whom the ruling was made."

be made after the court instructs the jury. By contrast, to preserve an error in *failing to give a requested instruction*, the aggrieved party need not make any further objection; under ORCP 59 H, the trial court's adverse ruling concerning the requested instruction "imports an exception." However, the failure to give a *requested* instruction is not error if the requested instruction was not correct in all respects. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998).

■ We agree with the parties that, to make a proper "objection or exception" under ORCP 64 B(6) to an error of law in instructing the jury, the aggrieved party must take steps that at least would be sufficient to preserve that error for review on appeal under ORCP 59 H, should the trial court overrule the objection or exception. With that in mind, we turn to the jury-instruction error alleged in this case.

The first alleged error in the jury instructions is an error of omission: the trial court failed to instruct the jury concerning "mutual assent" to a contract modification. Because Farmers requested a jury instruction on modification that mentioned the requirement of mutual assent, the error of omission in this case may be characterized *either* as: (1) the failure to give Farmers's requested instruction; *or* (2) an error in the jury instructions given, because they did not include an instruction on mutual assent. Because the parties do not agree on the characterization of the error at issue, we address each type of error in turn.

■ ■ Farmers requested the following instruction on contract modification:

> "* * * In order to be valid, a modification of a contract must meet all of the requirements for formation of a contract. To find that there was a modification, you must find that there was an offer and acceptance, that the parties mutually assented to the modification and the terms of the modification, and that there was an exchange of consideration for the modification."

Plaintiff argues that Farmers's requested instruction properly was refused by the trial court because it was not correct in all respects. The instruction implied that the jury, to find a valid modification of the agreement, had to find both "mutual assent" and "an offer and acceptance." According to plaintiff,

the law requires only evidence of "mutual assent," whether that assent is expressed through an offer and an acceptance or is manifested by conduct. We agree. *See Gordon*, 119 Or at 63 (mutual assent may be expressed in words or inferred from actions). Accordingly, it was not error for the trial court to refuse to give Farmers's modification instruction because that instruction misstated the law. *See Hernandez*, 327 Or at 106 (failure to give requested instruction not error unless requested instruction is correct in all respects).

By contrast, if we characterize the error at issue as an error in the jury instructions *given*, the fact that the requested instruction was not correct in all respects is not determinative. To have preserved an error of omission in the jury instructions given, Farmers must have pointed out that error of omission to the trial court, and an exception must have been made immediately after the court instructed the jury. As discussed below, however, Farmers did not adequately point out the error of omission to the trial court.

Farmers argues that its comments during the discussion with the court about the proposed modification instruction (set out *ante*) were sufficient to preserve the alleged error. After plaintiff had objected to Farmers's proposed modification instruction, counsel for Farmers suggested to the trial court that it was error to omit a reference to the requirement of mutual assent:

> "Your honor, I would point out to the Court, for example, that in [*Marnon*, 184 Or at 158-59], which we cite, it is of course well established that the minds of the parties must have met upon the asserted modification."

However, counsel for Farmers made that comment as part of his argument in support of the proposed modification instruction. Neither by its text nor its context was it an objection to the modification instruction that the court chose to give to the jury. As to *that* instruction, Farmers did not except separately, either before or after the court instructed the jury. Accordingly, if we characterize the error at issue as an error in the jury instructions given, then that error was not preserved.

We hold that, because Farmers neither offered an alternative jury instruction concerning mutual assent that was correct in all respects nor separately excepted to the trial court's omission of an instruction on that subject, Farmers did not "object or except to" the jury instruction error for the purposes of a motion for new trial under ORCP 64 B(6). Accordingly, the trial court erred as a matter of law in granting Farmers's motion for a new trial on that basis.

In regard to the other errors in the jury instructions cited by the trial court—the failure to instruct the jury concerning the integration clause and the failure to provide a verdict form with interrogatories—we agree with plaintiff that they, too, were not preserved. Moreover, Farmers does not argue in support of those rulings on review. Accordingly, we do not address them further except to note that they do not support the trial court's order granting a new trial.

■ However, our review of the trial court's order of a new trial does not end there. Farmers contends that, even if a new trial is not warranted because of the reasons cited by the trial court, a new trial nevertheless is warranted under the "we can't tell rule" described by this court in *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 788 P2d 428 (1990). In *Whinston*, this court held that a new trial is required when: (1) the jury considered more than one allegation in support of plaintiff's claim; (2) the evidence was sufficient to support one allegation but not one or more of the others; and (3) it cannot be determined on which allegation the jury based its verdict. *Whinston*, 309 Or at 357.

Farmers argues that plaintiff's three theories in support of his assertion that the at-will provision of the agreement was not determinative of the dispute (*viz.*, that the provision was modified or waived, or that Farmers was estopped from relying on it) are multiple "allegations" or "specifications" for purposes of the *Whinston* rule and that at least one of those three theories was not supported by the evidence. Therefore, Farmers argues, because the jury's verdict in this case did not specify on which theory it had based its determination that the at-will provision did not apply, Farmers is entitled to a new trial on the contract claim. Plaintiff responds that sufficient evidence supported each one of his

theories concerning the at-will provision. Alternatively, he points out that the *Whinston* rule applies only to cases involving multiple claims or multiple specifications in support of one claim, and not to cases like this one involving multiple legal theories.

■ We do not reach plaintiff's second argument because we agree with his first: The evidence in this case was sufficient to support the jury's verdict under any one of the three theories concerning why the at-will provision of the agreement was not determinative of the dispute between the parties. First, we address the evidence that Farmers waived the at-will provision of the agreement.

■ Waiver is the voluntary relinquishment of a known right. *Alderman v. Davidson*, 326 Or 508, 513, 954 P2d 779 (1998). A party to a written contract may waive a provision of that contract by conduct or by oral representation. *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 241, 855 P2d 626 (1993). Unlike a modification of a contract, waiver can be accomplished unilaterally, and it need not be supported by consideration.

■■ Farmers argues that a party may not waive a material term of a contract and that the written at-will provision in this case was a material term. Farmers offers no law directly in support of that argument. Indeed, it recognizes that this court has described the doctrine of waiver as applying broadly to any contract term. *See, e.g., Cross v. Campbell*, 173 Or 477, 493, 146 P2d 83 (1944) ("It is axiomatic that a party to a contract may waive performance of any of its provisions if he so chooses."). Although Farmers acknowledges those descriptions, it argues that they never have been the formal holding of an opinion of this court. Farmers urges this court to disavow those opinions and to hold otherwise, because such a holding would reinforce the importance of written agreements. We decline to do so.

Farmers also contends that the evidence was insufficient to prove that Farmers had waived the at-will provision because its company policy requiring good cause for termination does not contradict the written at-will provision of the agreement and thus cannot, as a matter of law, "unequivocally manifest" an intent to waive that provision.

 We agree with Farmers that the waiver must be unequivocal. *See Waterway Terminals Co. v. P.S. Lord*, 242 Or 1, 26, 406 P2d 556 (1965) (clear, unequivocal, decisive act required to show waiver by conduct). However, we disagree that Farmers's policy requiring good cause for termination, as a matter of law, could not be considered evidence of Farmers's unequivocal waiver of an earlier at-will provision in the appointment agreement with plaintiff. As noted previously, a company policy may manifest an intent to change an inconsistent, written contract provision. *See Yartzoff*, 281 Or at 656 (employee handbook evidence of modification of written term in employment contract). Whether a stated policy is evidence of an intent to waive a pre-existing, written contract provision is a question of fact, and the jury evaluates that evidence in the context of all the other communications between the parties. *See, e.g., Kabil Developments Corp. v. Mignot*, 279 Or 151, 158, 566 P2d 505 (1977) (evidence of parties' mutual assent to modification inferred from evidence of negotiations or other past conduct).

In this case, the same evidence discussed above that permitted a reasonable juror to find by clear and convincing evidence that the agreement had been modified also would have permitted a reasonable juror to find that Farmers unequivocally had waived its right to terminate plaintiff at will. Thus, we cannot say that there was insufficient evidence to support the jury's verdict whether that verdict was based on a theory that the at-will provision had been modified or on a theory that it had been waived.

Finally, we address plaintiff's theory that Farmers was estopped from relying on the at-will provision. A majority of the Court of Appeals held that, as a matter of law, estoppel was not available to plaintiff as a legal theory to prevent Farmers from relying on the written at-will provision of the agreement. *Bennett*, 150 Or App at 78. As discussed below, we disagree.

 This court has described the doctrine of estoppel by comparing it to the doctrine of waiver. The two doctrines are closely related, and sometimes it is difficult to distinguish between the two. *Smith v. Martin*, 94 Or 132, 141, 185 P 236 (1919). If there is no evidence of an intent to waive a contract

provision, a party nevertheless may be estopped from relying on that provision if that party led the other party to believe that the provision had been waived, and the other party relied on that perceived waiver. *Id.*; *see also Waterway Terminals Co.*, 242 Or at 26-27 (waiver not presumed if not intended unless other party was misled, to that party's prejudice, into honest belief that waiver was intended).

██ ██ Despite those precedents, a majority of the Court of Appeals reasoned that, "where there is an express contract, courts cannot create a new contract for the parties by estoppel," citing this court's opinion in *DeJonge v. Mutual of Enumclaw*, 315 Or 237, 843 P2d 914 (1992). *Bennett*, 150 Or App at 77. In *DeJonge*, this court held that estoppel could not be used to negate an unambiguous exclusion in a written policy of insurance when the insurer did not dissuade the insured from reading or understanding the exclusion. 315 Or at 245-46. However, this court's holding in *DeJonge* specifically concerned disputes in the interpretation of express insurance policies. This court's rationale for that holding, in addition to other policy considerations concerning insurance coverage, was the legislative rule established in ORS 742.016(1), the statutory parol evidence rule applying to written contracts of insurance. *Id.* at 241-42. In the absence of a superseding statute, however, estoppel is available to a party to a contract that was led to rely upon a perceived waiver of a contract provision. *See Moore*, 317 Or at 241 (in context of fire insurance policies, common-law rule that written contract may be orally modified did not apply because superseded by statute).

In this case, the estoppel theory was available to plaintiff and was supported by the evidence. From plaintiff's testimony, from evidence of Winter's representations to plaintiff during the 1985 performance plan, and from evidence of the other repeated assurances to plaintiff that the agreement would not be terminated without good cause, a reasonable juror could have found that plaintiff honestly and reasonably believed that Farmers had waived its right to rely on the at-will provision of the agreement. Evidence that

plaintiff, understanding that his agreement could be terminated only for cause, continued to invest in his district manager business, acquiesced in Farmers's heightened involvement in that business, and worked to achieve the goals set for him in the performance plans also established that plaintiff relied on that perceived waiver to his detriment. *See Schafer v. Fraser*, 206 Or 446, 477, 290 P2d 190 (1955) ("A substantial change of position in justifiable reliance upon a promise * * * renders the latter obligatory.").

Thus, we conclude that the jury's verdict was supported by sufficient evidence under any one of plaintiff's alternative legal theories. Accordingly, Farmers is not entitled to a new trial under the *Whinston* rule.

B. *Tort Claims*

Plaintiff brought two claims in tort against both Farmers and FGI. The first was a claim for breach of the duty of good faith and fair dealing. The other was a claim for breach of fiduciary duty. Plaintiff pleaded identical facts in support of each claim, including: that defendants had induced plaintiff to work hard and to invest in his insurance business, knowing all along that they intended to terminate his agreement without good cause; that defendants had distorted the truth about plaintiff's performance in order to appear to document a good-cause termination; that defendants had exercised greater control over plaintiff's business than that specified in the agreement; that defendants had "browbeaten" and "demoralized" plaintiff; and, finally, that defendants had terminated plaintiff's agreement without good cause. As noted above, the jury returned a verdict for plaintiff on each of those claims.

On defendants' motion, the trial court granted a JNOV on both of plaintiff's tort claims. In support of that ruling, the trial court noted that there was no "special relationship" between plaintiff and defendants that existed independent of the contract and, thus, that defendants could not be liable in tort for having breached the duty of good faith and fair dealing or for having breached any fiduciary duty. As noted above, the Court of Appeals affirmed the JNOV on the tort claims.

■ The issue on review respecting plaintiff's tort claims is whether defendants owed plaintiff either a duty of good faith and fair dealing or any fiduciary duty. The parties agree that no such duties are implied unless the parties are in a "special relationship," as this court has used that expression in its case law. *See Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996) (duty to avoid making negligent misrepresentations arises only in "special relationship" in which one party has obligation to pursue interests of other party). Accordingly, unless plaintiff's relationship with either defendant qualifies as the type of "special relationship" that gives rise to either duty alleged, no breach of duty can have occurred.[11]

Plaintiff contends that he was in a "special relationship" with defendants because defendants controlled his financial interests.[12] He argues that this court's decision in *Georgetown Realty v. Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), provides authority for the notion that, when one party's financial interests are dependent on the other's control, a "special relationship" exists. As discussed below, plaintiff misconstrues *Georgetown Realty*.

In *Georgetown Realty*, the court held that an insurer that had assumed its contractual obligation to defend an insured was in a "special relationship" with the insured and,

---

[11] We note that plaintiff contends that the two torts alleged—breach of good faith and breach of fiduciary duty—are distinct. He concedes, however, that each requires proof of a "special relationship" between the parties. Because, as discussed below, 332 Or at 163-63, we hold that plaintiff's relationship with defendants was not a "special relationship," we do not need to address the differences, if any, that may exist between the two torts as alleged by plaintiff.

[12] Plaintiff also argues that he was in a "special relationship" with defendants because they acted as his agents in jointly marketing defendants' insurance products. For that argument, plaintiff relies on *Hampton Tree Farms, Inc. v. Jewett*, 320 Or 599, 892 P2d 683 (1995). In *Hampton*, this court held that a jury could find that a creditor who agreed to represent a log seller, for the purpose of selling the log seller's business, acted as the log seller's agent and thus owed the log seller fiduciary duties. However, as noted in *Hampton*, to find a principal-agent relationship, there must be evidence that both parties consented to their respective roles. *Id.* at 617. In this case, plaintiff does not identify any evidence of his consent to an agency relationship. Indeed, the theory of his case was that defendants' takeover of his business was against his will and in breach of their agreement. Because plaintiff offers little to support his argument in favor of finding that defendants acted as his agents, we decline to address it further.

therefore, the law imposed tort duties on the insurer in carrying out the defense:

> "When a liability insurer undertakes to 'defend,' it agrees to provide legal representation and to stand in the shoes of the party that has been sued. The insured relinquishes control over the defense of the claim asserted. Its potential monetary liability is in the hands of the insurer. That kind of relationship carries with it a standard of care that exists independent of the contract and without reference to the specific terms of the contract."

*Id.* at 110-11 (citation and footnote omitted). As that excerpt makes clear, in determining whether the insurer in *Georgetown Realty* owed the insured a duty of care, the court focused on the *type* of relationship that exists between an insured and an insurer that has assumed the obligation to defend the insured. That relationship, by its nature, allowed the insurer to step into the shoes of the insured and to control the subject matter of the relationship, namely, the insured's own financial liability. In *Conway*, the court explained that the characteristic that made the relationship in *Georgetown Realty* "special" was the same characteristic found in "situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships":

> "* * * In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party."

*Conway*, 324 Or at 241.

By concentrating on the fact that Farmers, over time, exerted more and more control over his financial interests, plaintiff misunderstands the fundamental focus of our inquiry in *Georgetown Realty* and other "special relationship" cases. The focus is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead is on whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interests. In other words, the law does not imply a tort

duty simply because one party to a business relationship begins to dominate and to control the other party's financial future. Rather, the law implies a tort duty only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf. *Conway*, 324 Or at 241. With the foregoing in mind, we turn now to consider the nature of plaintiff's relationship with defendants.

We begin by examining all aspects of the relationship between the parties to determine whether one had a special responsibility toward the other. *Id.* If a contract exists, then we may examine that contract to determine the type of relationship between the parties. *Id.*

For purposes of arguing that a "special relationship" existed, plaintiff does not distinguish between the relationship that he had with Farmers and the relationship that he had with FGI. Because FGI controlled Farmers's operations and employed the managers with whom plaintiff worked, the two entities were, from plaintiff's perspective, indistinguishable. Of the two, plaintiff had a more direct relationship with Farmers because it was Farmers, not FGI, with whom he had entered into a contract. We look first at that contract—the 1981 appointment agreement—to determine whether its terms created the type of relationship that gave rise to a duty in tort.

As noted, the agreement between plaintiff and Farmers required Farmers *not* to interfere in plaintiff's business:

> "No control is to be exercised by [Farmers] over the time when, the place where, or the manner in which the District Manager shall operate in carrying out the objectives of this Agreement provided only that they conform to normal good business practice. * * *"

Nothing about the relationship as defined in the agreement suggested that plaintiff would relinquish control over his business or that Farmers would exercise independent judgment on plaintiff's behalf. Indeed, the agreement specifically provided that Farmers would do the opposite. As defined by the agreement, the nature of their relationship was not one in which Farmers was to step into plaintiff's shoes and to

manage his business affairs. Accordingly, the parties were not in a "special relationship," and Farmers did not owe plaintiff a duty in tort. Therefore, when Farmers began to interfere in plaintiff's business in contravention of a contract term, plaintiff's remedy was in contract only. *See Georgetown Realty*, 313 Or at 106 (if plaintiff's claim is based solely on breach of provision in contract which itself spells out obligation, remedy normally is in contract; if gravamen of complaint is party negligently performed under contract, remedy is in tort).

As noted above, plaintiff does not distinguish between his relationship with Farmers and his relationship with FGI. Because Farmers did not owe plaintiff a duty, and because FGI's only relationship with plaintiff was by virtue of its control over Farmers's operations, it follows that FGI also was not in a "special relationship" with plaintiff.

Accordingly, we hold that the trial court did not err in entering a JNOV in defendants' favor on the tort claims.

### III. CONCLUSION

In regard to plaintiff's contract claim, the evidence in this case supported plaintiff's theories that the parties had modified the at-will provision of their agreement. Accordingly, the jury's verdict in plaintiff's favor was supported by the evidence, and we reverse the JNOV on plaintiff's contract claim. We also hold that the trial court erred as a matter of law in ordering a new trial because Farmers failed to object or except to the jury instruction error as required under ORCP 64 B(6). Finally in regard to plaintiff's contract claim, because the evidence in this case supported all three of plaintiff's legal theories concerning why the at-will provision was not determinative of the dispute between the parties, Farmers is not entitled to a new trial under the *Whinston* rule.

In regard to plaintiff's tort claims, the evidence did not establish that a "special relationship" existed between plaintiff and either defendant. Thus, the jury's verdict as to the tort claims was not supported by the evidence. We affirm the JNOV on the tort claims.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court with instructions to reinstate the jury's verdict on the contract claim.