Argued and submitted April 21, judgment dismissing claims for breach of contract and promissory estoppel reversed; otherwise affirmed December 8, 2004

Willi FURRER,
Dennis Hanhi, Zita Ingham, Al Lovie, Christine Scholey,
Randall E. Sloper, George Elkins, Steve Erickson,
Janet McClellan, Sharon Miller, Melanie Schwartz,
Nancy Anderson, Vickie Brumit, Tina Cahill,
Glenda Cottrell, Shellie Huckabee, Terry Jensen,
Julie Ann Johnson, Vijay Mukhram, and Hunter Fales,
*Appellants,*

*v.*

SOUTHWESTERN OREGON
COMMUNITY COLLEGE,
*Respondent.*

02 CV 0077; A120157

103 P3d 118

Gene Mechanic argued the cause for appellants. With him on the briefs was Goldberg, Mechanic, Stuart & Gibson LLP.

Dian S. Rubanoff argued the cause for respondent. With her on the brief was Williams, Zografos & Peck.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Leeson, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

This is a class action for breach of contract, impairment of contract, and promissory estoppel. Plaintiffs, employees of defendant Southwestern Oregon Community College, appeal the judgment dismissing their complaint for failure to state facts sufficient to constitute claims upon which relief could be granted. ORCP 21 A(8). We affirm in part, reverse in part, and remand.

■     In reviewing the trial court's dismissal pursuant to ORCP 21 A(8), "we assume the truth of all well-pleaded facts" in the operative pleading, giving plaintiffs "the benefit of all reasonable inferences that can be drawn" in their favor. *Simons v. Beard*, 188 Or App 370, 372, 72 P3d 96 (2003). Plaintiffs' second amended complaint alleged that, in May 1987, defendant adopted a policy offering benefits to certain early retiring employees should defendant's board of education determine that early retirement would benefit both the employee and defendant. The early retirement policy was modified in July 1997, to change prospectively some of the eligibility provisions. We refer to the policy, as modified effective July 1, 1997, as the pre-2002 policy.

In its opening paragraph, the pre-2002 policy provided:

> "It is recognized by the Board of Education of the Southwestern Oregon Community College District that in certain instances early retirement by College employees may mutually benefit both the employee and [defendant]. It is therefore the policy of the Board of Education that when an employee requests early retirement according to this policy and where such mutuality of benefits from early retirement is determined and approved by the Board, [defendant] shall provide the early retirement incentives * * *."

The pre-2002 policy made certain changes that applied prospectively to persons hired on or after July 1, 1997. In particular, the pre-2002 policy provided that an employee hired before July 1, 1997, with 10 years of accumulated service who had attained 55 years of age and was "eligible for retirement" under the Public Employees Retirement System (PERS), was eligible for early retirement benefits if defendant's board

determined it to be of benefit to both defendant and the employee. The benefits under the pre-2002 policy included, up to age 65, the same medical and dental insurance coverage available to the employee before retirement. In addition, the pre-2002 policy offered a monetary incentive for retirement before age 65 consisting of payment of half the employee's accumulated unused sick leave days multiplied by the employee's daily pay rate at the time of early retirement and an incentive adjustment rate depending on the employee's age at retirement. The last paragraph of the pre-2002 policy stated:

"Nothing in the policy shall be construed to deny employees who early retire any other early retirement benefits to which they are otherwise entitled, nor shall this policy be construed to require the Board of Education to grant early retirement incentives to any applicant."

Plaintiffs alleged that, before March 1, 2002, defendant regularly determined that it was mutually beneficial to approve employee requests for early retirement.

The pre-2002 policy was again revised effective March 1, 2002 (the 2002 policy). That revision changed both the eligibility requirements for early retirement benefits and the scope of benefits. The introductory paragraphs of the 2002 policy provide:

"The Board of Education of the Southwestern Oregon Community College District ('the Board') recognizes that early retirement by employees of the college may, in certain instances, mutually benefit both the employee and [defendant]. Accordingly, an employee may request early retirement under the terms of this policy, and the Board may approve such early retirement if it determines, in its sole discretion, that a mutual benefit exists. The effective date of this policy is March 1, 2002.

"Notwithstanding the foregoing, the Board may, in its discretion, refuse to grant any request for early retirement under this policy if the total cost of the early retirement program to [defendant] for the next academic year is projected to exceed $250,000, based on a rolling six-year average. The Board's decision to waive this limitation in any given year shall not result in a waiver of its right to apply the limitation in a subsequent year.

"No person shall have any rights or expectations regarding early retirement under this policy prior to receiving written notice of approval for early retirement signed by the Chair of the Board of Education. No individual early retirement contracts shall be issued during the life of this policy. Except as provided by law or separate written agreement, this policy may be modified or revoked at any time as to any person who has not received such written notice."

The last paragraph of the 2002 policy stated, in boldface and uppercase, that **"THIS POLICY IS NOT A CONTRACT OR PROMISE OF BENEFITS. NOTHING IN THIS POLICY SHALL BE CONSTRUED TO REQUIRE THE BOARD TO GRANT EARLY RETIREMENT TO ANY EMPLOYEE."**

In their breach of contract claim, plaintiffs alleged that defendant adopted the pre-2002 policy in substantial part to induce employees to become employed and remain employed and, in so doing, "agreed that it has the authority to deny an early retirement application only upon a finding that there is no 'mutuality of benefits', and for no other reason." Plaintiffs alleged that, under the pre-2002 policy, defendant "applied the term 'mutuality of benefits' by considering whether approval of an early retirement application is in conformity with past practice on granting such applications." Plaintiffs further alleged that defendant "regularly determined" that it was mutually beneficial to approve certain employee requests for early retirement, "and was subject to the duty of good faith and fair dealing in the performance of its early retirement policy contract with employees." Plaintiffs also alleged that, by adopting the 2002 policy, including the provision disclaiming any contractual or promissory intent on defendant's part, defendant breached its obligations under the pre-2002 policy.

In their impairment of contract claim, plaintiffs restated their allegations concerning the contractual terms of the pre-2002 policy and alleged that the 2002 policy impairs defendant's contracts with plaintiffs and members of their class in violation of Article I, section 21, of the Oregon Constitution.

In their promissory estoppel claim, plaintiffs alleged that they relied on the pre-2002 policy in becoming and remaining employed, that defendant reasonably could foresee that reliance and that, as a consequence, defendant was estopped from altering the pre-2002 policy to plaintiffs' detriment.

The trial court dismissed each of plaintiffs' claims for failure to state facts sufficient to constitute a claim for relief. Among other reasons, the court explained that it remained "convinced that there is no legal theory that would support plaintiffs' argument that a contract could have been created under the facts they allege, having assumed those facts to be true." Plaintiffs appeal from the ensuing judgment of dismissal.

■ We begin with plaintiffs' assertion that the trial court erred in dismissing their breach of contract claim. Plaintiffs argue that, as described in their pleading, the terms of the pre-2002 policy gave rise to contractual obligations that defendant could not unilaterally modify. Plaintiffs insist that the "mutuality of benefit" provision in the policy did not render defendant's obligation to consider requests for early retirement illusory because it was, in its application, subject to the obligation of good faith and fair dealing. As a consequence, plaintiffs assert, defendant lacked unfettered discretion to approve or disapprove an early retirement application.

Defendant responds that the pre-2002 policy had no contractual force, because it gave defendant's board total discretion whether to permit early retirement. That discretion, defendant argues, makes any apparent promise illusory.

■■ An employee may accept an employer's unilateral offer of certain terms and conditions of employment by part performance. *Harryman v. Roseburg Fire Dist.*, 244 Or 631, 634-35, 420 P2d 51 (1966). Once the employee embarks on performance, the employer cannot unilaterally modify the resulting contract so as to alter rights that have vested under it. *Cf. Swenson v. Legacy Health System*, 169 Or App 546, 553-54, 9 P3d 145 (2000) (holding that, "in the absence of an agreement to the contrary, an employer has the right to modify benefits unilaterally and prospectively; by continuing to

work after learning of it, an employee impliedly accepts that modification"). The dispositive issue here is whether the pre-2002 policy conferred on defendant unlimited discretion to deny early retirement, thereby rendering any contractual obligation illusory. *See Shannon v. Mathers*, 271 Or 148, 152, 531 P2d 705 (1975) (provision giving party unlimited discretion to relieve itself of obligation under contract rendered contract illusory); *Corbitt v. Salem Gaslight Co.*, 6 Or 405, 407 (1877) (contract that contains promise by one party without concurrent obligation by second party is illusory).[1]

■ This court's decision in *Wyss v. Inskeep*, 73 Or App 661, 699 P2d 1161, *rev den*, 300 Or 64 (1985), is helpful in resolving that issue. *Wyss* involved a written employee bonus plan under which the company placed a certain percentage of its net income before taxes into a bonus pool and the board of directors, acting in good faith, discretionarily allocated the pool among eligible employees. *Id.* at 665. The company asserted that the plan was not an enforceable contract because its "total discretion" in allocating the pool rendered illusory any apparent promise to distribute the bonuses. *Id.* at 667. This court disagreed, reasoning that, because the contract called for the company to exercise its discretion in good

---

[1] An "illusory" promise is described in the *Restatement (Second) of Contracts* § 2 comment e (1981), in part, as follows:

"Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise. They may not even manifest any intention on the part of the promisor. Even if a present intention is manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in an expectation of performance."

A promise is not illusory when the promisor lacks an unconditional power to refuse to perform. Joseph M. Perillo and Helen Hadjiyannakis Bender, 2 *Corbin on Contracts* § 5.28, 149-50 (2d ed 1995). For example,

"[a]n implied obligation to use good faith is enough to avoid the finding of an illusory promise. A common illustration involves a promise that is conditioned on the personal satisfaction of the promisor. For example, a hotel agrees to hire a valet service for its hotel guests as long as the services are satisfactory to the hotel. The hotel's promise would be illusory if the hotel could avoid its obligation by simply claiming dissatisfaction. Since there is an implied obligation that the hotel will exercise good faith in determining its dissatisfaction, the hotel's promise is not illusory."

(Footnote omitted.)

faith, that discretion was not unlimited and its promise therefore was not illusory. *Id.* at 667-68. We also noted that, even if the contract had not expressly provided for the board to act in good faith, that standard implicitly would apply, as it does in every contract. *Id.* at 668 n 7. *Wyss* therefore stands for the proposition that, when an employment contract vests an employer with discretion in conferring a particular employment benefit, that discretion must be exercised in good faith. Stated differently, even if the employer's discretion extends to denying the benefit, its decision to do so must be made in good faith.[2]

Here, by providing that defendant would determine whether an application for early retirement conferred mutual benefits on the parties, the pre-2002 policy conferred discretion on defendant. As in *Wyss*, however, that discretion, even if broad, was not unlimited. As pertinent here, the relevant inquiry necessarily included matters that reasonable persons would regard as pertinent to the parties' respective institutional and personal interests. *See Best v. U. S. National Bank*, 303 Or 557, 561-66, 739 P2d 554 (1987) (duty of good faith in the performance of a contract requires that the parties act in an objectively reasonable manner). Because defendant was obligated to exercise its discretion under the pre-2002 policy in good faith, the promise of an early retirement benefit in that policy was not illusory.

We therefore conclude that plaintiff alleged facts sufficient to constitute a claim that defendant's pre-2002 policy included a contractual promise to pay early retirement benefits to eligible employees on a good-faith determination by defendant's board that early retirement would benefit defendant and the employee and that defendant repudiated that promise by adopting the 2002 policy.

■ We next consider plaintiffs' contention that the trial court erred in dismissing their impairment of contract claim.

---

[2] By contrast, in *Kane v. League of Oregon Cities*, 66 Or App 836, 676 P2d 901, *rev den*, 296 Or 829 (1984), where the defendant's announcement of a fellowship did not contain criteria constituting an offer and therefore left the defendant free to exercise its discretion in selecting the best-qualified applicant, the plaintiff's application for the fellowship did not constitute an acceptance of an offer, and the defendant's rejection of his application did not amount to a breach of contract.

The court dismissed that claim on the same ground on which it dismissed the breach of contract claim. In doing so, the court did not reach defendant's alternative ground for dismissal: that plaintiffs did not allege any law or legislative action by the state that would support a claim under Article I, section 21, of the Oregon Constitution. Article I, section 21, provides, in part, that "[n]o * * * law impairing the obligation of contracts shall ever be passed[.]" By its terms, that provision prohibits the state from enacting laws that impair the obligation of contracts. *Eckles v. State of Oregon*, 306 Or 380, 399, 760 P2d 846 (1988); *Does 1-7 v. State of Oregon*, 164 Or App 543, 552, 993 P2d 822 (1999), *rev den*, 330 Or 138 (2000). Even assuming that defendant is authorized to adopt policies that have the force of a law, plaintiffs did not allege facts demonstrating that the 2002 policy was a state law as contemplated by Article I, section 21. Accordingly, the trial court did not err in dismissing plaintiffs' claim for impairment of contract.

■　　　We turn to whether the trial court erred in dismissing plaintiffs' claim that defendant is estopped by promises in the pre-2002 policy "from modifying the pre-March 1, 2002 [p]olicy to the detriment of Plaintiffs and members of their class." In *Bixler v. First National Bank*, 49 Or App 195, 199-200, 619 P2d 895 (1980), we described the elements of promissory estoppel as

"(1)　a promise,

"(2)　which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred,

"(3)　actual reliance on the promise,

"(4)　resulting in a substantial change in position."

We conclude that plaintiffs have adequately alleged each of the required elements. Plaintiffs alleged that defendant promised that it would consider in good faith whether their requests for early retirement were mutually beneficial; that defendant reasonably could foresee that its pre-2002 policy would induce plaintiffs to become employed and maintain their employment; that plaintiffs relied on defendant's promise; and that the 2002 policy amounted to a substantial change in defendant's position that worked to the detriment

of employees otherwise eligible for early retirement benefits under the pre-2002 policy. In addition, we reject defendant's argument that plaintiffs have not alleged that they suffered a cognizable detriment because they did not allege that they actually have been denied early retirement benefits. It is enough that plaintiffs alleged that they suffered a loss of the potential benefits under the pre-2002 policies. *See Employment Div. v. Western Graphics Corp.*, 76 Or App 608, 613, 710 P2d 788 (1985) (a party asserting estoppel must have relied to his or her detriment, which may, but need not, involve a benefit actually lost).

Judgment dismissing claims for breach of contract and promissory estoppel reversed; otherwise affirmed.