Argued and submitted October 6, 2010, affirmed May 25, 2011

Suzanne J. WATKINS,
Thomas A. Amburn, Lorna Lynn Inman,
Marilane Jorgenson, Jeffry Lee Michael, Eva L. I. Arce,
David A. Bassett, Helen M. Connelly, Daniel Converse,
Gilbert Covarrubias, Edwin F. Cramp, Michael Gould,
Laurie Hansen, Cecilia Hay, Philip R. Killian,
Donna Lipparelli, Thomas R. Lucas, Jackie McBee,
Michael Doyle Perkins, Ernest A. Peters,
Constance L. Roach, Sara Rubrecht, Michael G. Sanchez,
Wendy Scruggs, Ken Selig, Robin Ward,
James N. Warren, Ronald Wayne Winfrey,
and Sandra L. Titzler, Personal Representative of
the Estate of Scott Titzler, Deceased,
on behalf of themselves and others similarly situated,
*Plaintiffs-Appellants,*

*and*

Jillana TAPPAN,
Peggy Lowell, Laverla J. Young,
and Brian Anderson, et al,
*Plaintiffs,*

*v.*

JOSEPHINE COUNTY,
*Defendant-Respondent.*

Josephine County Circuit Court
05CV0577; A141306

259 P3d 79

Gene B. Mechanic argued the cause for appellants. With him on the briefs were Elizabeth A. Joffe, Cathy Highet, and McKanna Bishop Joffe & Arms, LLP.

Kirk S. Peterson argued the cause for respondent. With him on the brief were Devra S. Hermosilla and Bullard Smith Jernstedt Wilson.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Plaintiffs are current and former nonunion employees of defendant Josephine County. After the county commissioners passed a resolution in 2005 eliminating or reducing certain employee benefits, plaintiffs brought this action, asserting that the resolution breached their employment contract, impaired an obligation of contract in violation of Article I, section 21, of the Oregon Constitution,[1] and transgressed principles of promissory estoppel. They also sought class action certification, as well as damages and penalties for various alleged statutory violations. The county moved for summary judgment, primarily on the ground that the disputed benefits were entirely prospective and the contract with plaintiffs never included a promise to maintain them permanently; for that reason, the county argued, there was no contract term that the resolution breached, no contract obligation to impair, and no promise on which to base an estoppel. The trial court granted the county's motion with respect to the breach of contract and Article I, section 21, claims, denied the motion regarding promissory estoppel, and did not reach the wage claims or class action request. Subsequently, the county filed a second summary judgment motion on the remaining claims and the court granted it. This appeal ensued. We affirm.

Plaintiffs are or were county employees in managerial, supervisory, or confidential positions who were hired by the county before August 2005. The terms of their employment are set by the county board of commissioners under authority conferred by the county charter. In particular, the charter provides:

"Section 17.   ADMINISTRATIVE PERSONNEL.

"The Board of County Commissioners may appoint administrative and advisory personnel of the county to offices and positions established by the Board or pursuant to its authority.

"* * * * *

---

[1] Article I, section 21, of the Oregon Constitution provides, in part, "No * * * law impairing the obligation of contracts shall ever be passed[.]"

"Section 25.   COMPENSATION

"(1)   The compensation and job related expenses of personnel in the service of the county shall be fixed annually by the budget committee."

Pursuant to this charter authority, the board first issued personnel rules in 1979. The rules have been amended by resolution of the board several times over the past three decades. At all relevant times, however, the rules contained the following two general provisions. The first, emphasized by plaintiffs and serving as one basis for their argument that the rules promised a benefit package that could not be eliminated or reduced, provides that one "purpose" of the rules is "[t]o develop a program of recruitment, training, advancement, and tenure that will make a *career* in the County government attractive to persons who possess both ability and integrity." Non-Union Personnel Rule (NPR) 2.1(B) (emphasis added). The second rule, emphasized by defendants and serving as one basis for their argument that the county retained the right to alter or abolish the benefit package (subject to statutory and constitutional constraints), provides that "the Board shall take action *as they deem appropriate*" on any proposed rule amendment. NPR 2.3 (emphasis added).[2]

At issue in this case are four employee benefits provided under the 2002-04 personnel rules (2004 rules) and the modifications to those benefits under the board's 2005 amendments (2005 rules). The 2004 rules provided plaintiffs with (1) an employer contribution to a deferred compensation account in an amount matching the employee's contribution, up to six percent of the employee's monthly salary, redeemable whenever the employee terminates employment with the county; (2) a "time management leave" program (TML), which entitled employees to accrue unused vacation, sick, and personal leave time and redeem it for cash each month or at the end of their employment; (3) a seven-step automatic salary increase based on years served; and (4) a provision that required that the county show "just cause" before disciplining or terminating an employee.

---

[2] The rule itself does not state that it applies to "any proposed rule amendment," but the parties stipulated to that meaning.

In 2005, the board faced significant county-wide budget cuts and passed an ordinance amending the rules governing benefits. The 2005 rules, all of which applied only prospectively, eliminated the six percent match to deferred compensation accounts, stopped the accrual of unused leave days into a TML account (without affecting the ability to use accrued days as they could be used under the 2004 rules), reduced salary step increases from seven increments to three, and modified the standard of discipline from "just cause" to "insufficient cause."

Following the board's enactment of the 2005 rules, plaintiffs filed this action alleging that, in reducing the benefits provided by the 2004 rules, the county breached the terms of plaintiffs' employment contract, impaired an existing obligation of contract, and should be estopped from reneging on its promises. Plaintiffs sought declaratory and injunctive relief as well as damages "in an amount equal to that of the [benefits that each plaintiff] has been improperly denied." Defendant moved for summary judgment. The trial court initially granted defendant's motion with respect to the impairment of contract claim and breach of contract claim, but denied the motion as to the promissory estoppel claim. The trial court ordered plaintiffs to strike the contract claims; plaintiffs complied and filed a third amended complaint. After additional discovery, defendant again moved for summary judgment. The trial court granted defendant's motion on the remaining claims, and plaintiffs now appeal.[3]

The recurring problem of determining whether particular benefits inhere in legislatively created (or quasi-legislatively created) employment contracts requires us to apply general principles of contract law, as those principles are inflected by principles of employment law and statutory interpretation. Generally, to interpret a contract provision,

---

[3] Defendant argues that plaintiffs' breach of contract and constitutional impairment claims are unpreserved because plaintiff did not plead them in the third amended complaint. However, *Propp v. Long*, 313 Or 218, 831 P2d 685 (1992), the case on which defendant relies, held that the plaintiff had waived claims that she *voluntarily* omitted from her amended pleading. The court emphasized that "no order of the court intervened in [the plaintiff's] choice." *Id.* at 223. In this case, the trial court ordered the contract claims struck to reflect the disposition of the first summary judgment order. Thus, *Propp* does not support defendant's proposition that plaintiffs waived the claims, and we consider them on review.

we examine its text within the context of the entire contract in light of the circumstances underlying the contract's formation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). If, after that examination, the contract is ambiguous, we turn to such indications of the parties' intent as "the parties' practical construction of an agreement." *Yogman v. Parrot*, 325 Or 358, 364, 937 P2d 1019 (1997). A contract term is ambiguous if it is capable of more than one sensible and reasonable interpretation, *PGF Care Center, Inc. v. Wolfe*, 208 Or App 145, 151, 144 P3d 983 (2006), which is a question of law, *Yogman*, 325 Or at 361 (quoting *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995)). If ambiguity remains after examination of text, context, and other indications of intent, we turn to "appropriate maxims of construction." *Id.* at 364.

In the employment context, if an employer offers a benefit to an at-will employee, the employee accepts the offer, thereby creating a unilateral contract, by commencing or continuing employment thereafter. *McHorse v. Portland General Electric*, 268 Or 323, 331, 521 P2d 315 (1974); *Funkhouser v. Wells Fargo Corp.*, 224 Or App 308, 312, 197 P3d 592 (2008), *rev den*, 346 Or 115 (2009). Generally, an employer may prospectively change or eliminate a term of the employment contract. However, the offer may contain a promise of a future benefit; if so, then the employee's right to that benefit accrues at the time of acceptance and, if the employer fails to perform the promise, that failure amounts to an actionable breach. *Sabin v. Willamette-Western Corp.*, 276 Or 1083, 1089, 557 P2d 1344 (1976); *Stuart v. Tektronix, Inc.*, 83 Or App 139, 143-44, 730 P2d 619 (1986), *rev den*, 303 Or 74 (1987).

Although these general principles apply to contracts created by legislation, additional rules apply as well. *Hughes v. State of Oregon*, 314 Or 1, 14, 838 P2d 1018 (1992); *Eckles v. State of Oregon*, 306 Or 380, 397-99, 760 P2d 846 (1988), *appeal dismissed*, 490 US 1032 (1989). One of those rules is that a government contract will not be inferred from legislation that does not unambiguously express an intention to create one. *Hughes*, 314 Or at 14; *Eckles*, 306 Or at 397. That requirement—lack of ambiguity—applies not only to the existence of a contract *per se*, but to "the extent of the obligation created" by the contract, that is, to the question of

whether its terms encompass a particular promise. *Eckles*, 306 Or at 397; *see also Hughes*, 314 Or at 27-29. In *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996), Justice Gillette and two of his colleagues accused the majority of abandoning the nonambiguity requirement. *Id.* at 407-08 (Gillette, J., specially concurring, in part and specially dissenting, in part). That accusation may or may not be correct. *See id.* at 375 (majority states that "[t]he statutory pension system and the relationship between the state and its employees *clearly established* a contractual obligation" (emphasis added)). Regardless, the most recent Supreme Court case on this issue restates the nonambiguity rule in, well, unambiguous terms: In holding that a statute did not contain a promise that Public Employee Retirement System (PERS) members could contribute six percent of their salaries to their regular accounts "throughout their PERS membership," the court explained that "the text of ORS 238.200(1)(a) (2001) and its statutory context do not establish *clearly and unambiguously* that the legislature intended" such a promise. *Strunk v. PERB*, 338 Or 145, 192-93, 108 P3d 1058 (2005) (emphasis added). Another statute, the court ruled, "is *unambiguously* promissory." *Id.* at 186 (emphasis added).

In the present case, the parties agree that the county's ordinances and charter create a contract and that the 2004 contract provided for certain benefits that were significantly reduced or eliminated by the 2005 amendments. The issue is whether the 2004 contract benefits were permanent. Under the principles of government employment contracts outlined above, the issue, more precisely stated, is: Did the 2004 contract contain an unambiguous promise that the employer pick-up, TML program, step raise schedule, and "for cause" termination provision were permanent? To answer that question, we deploy the familiar strategies of statutory construction, that is, examination of text, context, legislative history, and (if necessary) maxims of construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Plaintiffs do not contend that the 2004 personnel rules describing the disputed benefits contain express textual guarantees of permanence. Further, they stipulate that the rules contain an express reservation of rights under which

the Board of County Commissioners " 'shall take action as they deem appropriate' on any proposed amendments" to the personnel rules. Rather, plaintiffs focus on a provision set out in the "Purpose" section of the rules stating that one of the rules' objectives is "[t]o develop a program of recruitment, training, advancement, and tenure that will make a career in County government attractive to persons who possess both ability and integrity." They also emphasize certain assurances of permanence deriving from some of the county's handbooks and from some oral assurances from county employees. We do not find plaintiffs' arguments to be persuasive.

A statement that personnel rules are designed to make a particular "career" attractive bears no logical relationship to a promise that the rules create permanent benefits. If the former implied the latter, it would be difficult to conceive of employment benefits—which, by definition, are designed to make employment attractive—that would not implicitly bear a promise of permanence. And even if we could be convinced that, in some circumstances, offering a benefit that is intended to enhance a career is necessarily an offer that cannot be retracted, we would conclude that the circumstances here do not qualify. First, the offer occurs in the context of an express proviso that it is *not* beyond amendment; the county board retained the right to "take action as they deem appropriate" on proposed rule amendments. In fact, the deferred compensation agreement that plaintiffs signed provides that "[t]he County may terminate the Deferred Compensation Plan." (Underscoring in original.) Second, the offer occurs in the context of—indeed, under the authority of—the county charter. A municipal charter bears the same relationship to the municipality's ordinances that a state or federal constitution bears to those respective bodies' legislation: It defines what is and is not within the entity's legislative authority. *West Linn Corporate Park v. City of West Linn*, 349 Or 58, 96, 240 P3d 29 (2010). Here, defendant's charter expressly provides, "The compensation and job related expenses of personnel in the service of the county *shall be fixed annually* by the budget committee [of the Board of County Commissioners]." Josephine County Charter, Section 25 (1) (emphasis added). Arguably, under that

charter provision, even if the county rules unambiguously promised some future benefits, those rules would be *ultra vires* beyond a single year. *But see West Linn Corporate Park*, 349 Or at 96 ("However, where a city has broad power to act, but is required to exercise that power in conformance with certain procedures or limitations, a failure to so conform does not necessarily render a given governmental action *ultra vires.* * * * Kernin v. City of Coquille*, 143 Or 127, 135-36, 21 P2d 1078 (1933)[.]"). In any event, the charter clearly is an important part of the rules' context; that context, along with the text of the disputed benefit provisions, not only fails to unambiguously establish a promise of permanence; they establish that the benefits were *not* intended to be permanent.

Plaintiffs' arguments that employee handbooks and oral assurances from county employees constitute extrinsic evidence of guaranteed permanence are also unavailing. It is true that such assurances can constitute part of an employment contract. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 656, 576 P2d 356 (1978). Whether the assurances are contractual depends on the intentions of both parties. *Id.* When the contract is created by statute or ordinance, that question reduces to a question of legislative intent. *Strunk*, 338 Or at 175. Plaintiffs cite no ordinance, and we can find none, that suggests that anything outside of the personnel rules themselves can be considered to be part of the employment contract.[4] Further, ORS 203.240(1)(b) provides, "Unless provided otherwise by county charter or ordinance, [a board of county commissioners shall] consist of three county commissioners. A majority of the board is required to transact county business." We have held that persons are "charged with knowing the limitation" of that statute and, for that reason, persons are charged with knowing that statements from sources other than a majority of county commissioners do not bind the county. *Holdner v. Columbia County*, 123 Or App 48, 52, 858 P2d 901 (1993).

---

[4] In *Lauderdale v. Eugene Water and Electric Board*, 217 Or App 551, 177 P3d 13 (2008), we held that fact sheets that were distributed to employees by management describing retiree health care benefits were part of the employment contract. We based that conclusion on the uncontradicted fact that the employer approved those documents. There is no such evidence of board approval in this case.

In sum, neither the text, context, nor extrinsic material establishes unambiguously that the county's 2004 personnel rules created benefits that could not be amended. Indeed, we conclude that, if anything, the materials establish that the rules do *not* create unamendable benefits.

Plaintiffs argue that, regardless of the express right to amend the benefit resolution at will, the county was bound to refrain from doing so by the obligation, implicit in every contract, to act in good faith. In support of that argument, plaintiffs rely on *Furrer v. Southwestern Oregon Community College*, 196 Or App 374, 103 P3d 118 (2004). In that case, the employer in a 2002 policy had promised that it would give employees certain early retirement benefits if "mutuality of benefits [to employees and employer] from early retirement is determined and approved by" the defendant. *Id.* at 376. The 2002 policy also stated, in all capital letters and boldface, **"THIS POLICY IS NOT A CONTRACT OR PROMISE OF BENEFITS. NOTHING IN THIS POLICY SHALL BE CONSTRUED TO REQUIRE THE BOARD TO GRANT EARLY RETIREMENT TO ANY EMPLOYEE."** *Id.* at 378. Later, the defendant added the proviso that it could refuse to grant the benefits if the total cost of the early retirement program exceeded $250,000. The plaintiffs brought an action for breach of contract. The trial court dismissed the plaintiffs' complaint. We reversed. In rejecting the employer's argument that it had retained the discretion to change the benefit, we stated, "[W]hen an employment contract vests an employer with discretion in conferring a particular employment benefit, that discretion must be exercised in good faith. Stated differently, even if the employer's discretion extends to denying the benefit, its decision to do so must be made in good faith." *Id.* at 381.

*Furrer* does not help plaintiffs for two reasons. First, as we also noted in that case, the discretion that the employer reserved to itself was not unlimited; it was the discretion to "determine whether an application for early retirement conferred mutual benefits on the parties." *Id.* It was *that* discretion that the employer had the obligation to exercise in good faith:

"[B]y providing that defendant would determine whether an application for early retirement conferred mutual benefits on the parties, the pre-2002 policy conferred discretion on defendant. * * * [H]owever, that discretion, even if broad, was not unlimited. As pertinent here, the relevant inquiry necessarily included matters that reasonable persons would regard as pertinent to the parties' respective institutional and personal interests. * * * Because defendant was obligated to exercise its discretion under the pre-2002 policy in good faith, the promise of an early retirement benefit in that policy was not illusory."

*Id.* In the present case, the county's discretion was not the discretion to determine whether some criterion applied; it was discretion to amend the benefit resolution "as they deem appropriate." Second, even if the county had a general good faith obligation, plaintiffs' brief provides us with no argument as to what the county did that amounted to *bad* faith.

Plaintiffs also cite several cases for the proposition that certain employee benefits become "vested" at the time of employment and cannot be taken away, even prospectively. *E.g.*, *Strunk*, 338 Or 145; *Oregon State Police Officers' Assn.*, 323 Or 356; *Lauderdale v. Eugene Water and Electric Board*, 217 Or App 551, 177 P3d 13 (2008). Those cases are inapposite. In each of them, the conclusion that the disputed benefits had vested depended on the predicate conclusion that the benefits were first *promised.* In *Strunk*, the court rejected the petitioners' argument that their rights to certain retirement benefits accrued when they began employment:

"In their reply brief, petitioners also argue that this court's decision in *Taylor* [*v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 510 P2d 339 (1973)] 'is a much more pivotal case in this court's developing analysis of pension benefits than is [*Oregon State Police Officers' Assn.*].' In *Taylor*, which involved a county retirement system, the court acknowledged that 'contractual rights can arise prior to the completion of the service necessary to a pension.' 265 Or at 451. Of course they can. *The predicate question—which we determine to be dispositive in these cases—is whether the contract offer that the particular pension plan presents contains such a promise, i.e.*, a promise that extends over the life of a covered member's service."

338 Or at 192 n 40 (emphasis added); *see also Oregon State Police Officer's Assn.*, 323 Or at 374 (pension rights vested because a statute and its implementation "promised a pension benefit"); *Lauderdale*, 217 Or App at 558 (benefits vested because employer "promised orally and in writing that * * * plaintiffs and their dependents would receive" them); *cf. Funkhouser*, 224 Or App at 313 (benefits did not vest because they were not promised). Our conclusion that the county never promised the permanence of the disputed benefits distinguishes this case from the cases on which plaintiffs rely.[5]

The same conclusion disposes of plaintiffs' remaining arguments. Defendant did not impair the contractual obligation to maintain the benefits permanently because there was no such obligation. Nor can plaintiffs succeed on a claim for promissory estoppel; the predicate element of such a claim is, not surprisingly, a promise. *Schafer et al v. Fraser et ux*, 206 Or 446, 468, 290 P2d 190 (1955); *Furrer*, 196 Or App at 382.

Because we reject plaintiffs' breach of contract, impairment of contract, and promissory estoppel claims, we need not address their claims that prevailing on one or more of those claims entitles them to statutory remedies. Nor is it necessary to address their claim for class status.

Affirmed.

---

[5] In addition, the cases that plaintiffs cite and rely on deal with pensions or other retirement benefits. We have noted that such benefits are *sui generis. Lauderdale*, 217 Or App at 562-64.