Argued March 31; reversed May 10, 1938

CAMPBELL *v.* ALDRICH ET AL.
KIGGINS ET AL. *v.* ALDRICH ET AL.
McCORD ET AL. *v.* ALDRICH ET AL.

(79 P. (2d) 257)

In Banc.

*W. Lair Thompson*, of Portland (McCamant, Thompson, King & Wood, of Portland, on the brief), for appellants.

*B. G. Skulason*, of Portland (Skulason & Skulason, of Portland, on the brief), for A. A. Campbell and others.

*R. R. Bullivant*, of Portland, for C. M. Kiggins and others.

*Thaddeus W. Veness*, of Portland, for Birdine Merrill and others.

BELT, J. The plaintiffs, who are teachers in the public schools of District No. 1, Multnomah county, Oregon, challenge, by these consolidated suits, the validity of section 20 of chapter 125, Oregon Laws for 1935, known as the teachers' tenure law, requiring the retirement by February 1, 1938, of all teachers employed by said school district who, at that time, shall have reached the age of 65 years. A general demurrer was overruled as to all the complaints—there being no material difference in the same—and, upon refusal of the defendants and interveners further to plead, a decree was entered enjoining the defendants from enforcing or attempting to enforce the compulsory retirement provision of the above section as applied to the plaintiffs. Defendants appeal.

The plaintiffs assert that, by virtue of the original teachers' tenure law (Ch. 37, Oregon Laws for 1913) they acquired certain contractual rights as permanently

employed teachers, which cannot be impaired by subsequent legislation. More specifically, it is contended by plaintiffs that section 20 of the teachers' tenure law of 1935, in so far as the same is applied to them, is unconstitutional in that, (1) it impairs their contractual rights (Sec. 21, Art. 1, Constitution of Oregon and Sec. 10, Art. 1, Constitution of the United States); (2) deprives them of their property without due process (Fourteenth Amendment to the Constitution of the United States); and, (3) denies them equal protection of the laws (Fourteenth Amendment to the Constitution of the United States).

The effect of the demurrers is to admit that the plaintiffs are on the "list of permanently employed teachers" and that they are "in every way qualified, ready, able, and willing to continue in said employment and to discharge the duties thereof". No charge is made of improper action of the board of directors in requiring the retirement of the plaintiffs as teachers, if the law is valid. The action of the district board is pursuant to statute and is based upon the fact that the plaintiffs, on February 1, 1938, had attained the age of 65 years, or more, and for no other reason. The sole issue, therefore, is whether the legislature had the power to enact section 20 of the 1935 teachers' tenure law, making it compulsory for teachers to retire at the age of 65 years.

Since the alleged contractual rights of the plaintiffs are bottomed on the tenure act of 1913, it is well at this juncture to set forth, so far as material herein, the provisions of the act (Ch. 37, Oregon Laws for 1913). The act is entitled:

"AN ACT To provide for the employment and discharge of teachers, officers, and other employees in school districts now having or which at any time hereafter shall have a population of 20,000 or more persons."

"Section 1. The board of directors of every school district in this State now having or which at any time hereafter shall have a population of 20,000 or more persons shall have the power and authority to appoint and remove, hire and discharge all teachers, officers, agents and employees as it may deem necessary, and to fix their compensation. * * *

"Section 3. The teachers employed in any such district or districts, during their first two years of service shall be classed as probationary teachers. * * *

"Section 4. Teachers who have been employed in the schools in any such district or districts as regularly appointed teachers for not less than two successive annual terms shall by the board of directors be placed upon the list of permanently employed teachers.

"Section 5. Teachers so placed upon such list shall not be subject to annual appointment, but shall continue to serve until dismissed or discontinued in the service by the board in the manner herein provided, subject to the rules of the board concerning suspensions, but such rules shall be reasonable and for the good of such schools. * * *"

Sections 6, 7, 8 and 9 provide procedure for dismissal of teachers upon charges filed.

"Section 10. All teachers who shall have been employed in such district or districts two or more years prior to the first day of July, 1913, shall be eligible to re-election as permanent teachers, and all such teachers who shall be re-elected for employment by the board for the school year beginning in September, 1913, shall be permanent teachers under the provisions of this act.

"Section 11. All acts and parts of acts in conflict herewith are hereby repealed. Provided, however, that all general laws of this State relating to public schools shall be applicable to districts under this act except in so far as the same may be in conflict with the provisions hereof."

The above act remained unchanged, so far as the term of employment of teachers is concerned, until 1933,

when the legislature (Ch. 196, Laws of Oregon for 1933) added the following provisions:

"* * * provided, however, that from and after the first day of February, 1938, when any teacher, as the word 'teacher' is defined in section 35-2602, Oregon Code 1930, shall have, prior to said date, attained the age of 65 years, and when any teacher at said date has attained the age of 65 years, and when any teacher after said date shall attain the age of 65 years, his or her services as a teacher shall terminate at the close of the semester or term in which he or she shall attain the age of 65 years, or at the end of the first semester or term subsequent to the first day of February, 1938, and the procedure hereinbefore set forth for the dismissal of a teacher or transfer of a teacher shall not apply to or be required or necessary for the dismissal of the teacher who has attained the age of 65 years, as herein set forth."

In 1935, the legislature (Ch. 125, Laws of Oregon for 1935) repealed all teachers' tenure laws and enacted, without any saving clause, an entirely new and comprehensive act. Section 20 of the act provides:

"On the first day of February, 1938, teachers who have reached the age of 65 years shall be retired by the board; and, thereafter any teacher shall be retired at the close of the semester or term in which he or she reaches said age, and notwithstanding any provisions of this act."

■■ Let us first determine whether the plaintiffs acquired any contractual rights, as distinguished from a mere status or privilege, by virtue of the 1913 tenure law. Ordinarily it is the function of a legislature to make laws and not contracts. It is true, however, that legislative enactments may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the state. It is also equally well established that the intention of the legis-

lature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, must clearly and unmistakably appear. The intention to surrender or suspend legislative control over matters vitally affecting the public welfare cannot be established by mere implication: 6 R. C. L. 339.

■ Having in mind the above legal principle, it is important that the particular language of the tenure act in question be considered in determining whether the legislature intended to create contractual rights in teachers who had served under contracts during the probationary period. During the first two years of service the teachers are, under the 1913 act, classified as probationary teachers. The general laws of the state in reference to the execution of teachers' contracts are, by virtue of section 11, made applicable. However, after the expiration of such period, no contract is contemplated as the teachers are, by force of the statute, "placed upon the list of permanently employed teachers" and are not "subject to annual appointment". As a matter of fact no execution of contracts is pleaded by plaintiffs. They continue to serve, not by virtue of any contract, but because the statute confers such privilege upon them. It is not a contractual right which they enjoy but rather a status making their positions as teachers secure against the whim, caprice and political motives of our ever-changing office holders. We are at a loss to find language in the act clearly and plainly indicating an intention to surrender or suspend legislative control over the tenure of teachers. The legislature, in 1913, in dealing with the all-important question of teachers' tenure, did not indicate an intention to preclude such action by subsequent legislatures that might, in the light of experience, see fit to declare a different policy.

In *State of Indiana v. Brand,* 303 U. S. 95 (58 S. Ct. 443, 82 L. Ed. 444, 113 A. L. R. 1482), strongly relied upon by respondents, the court had under consideration the teachers' tenure law of Indiana. In that case the teacher, who had asserted an impairment of her contractual rights, had a written contract containing the clause, "It is further agreed by the contracting parties that all of the provisions of the Teachers Tenure Law, approved March 8, 1927, shall be in full force and effect in this contract". The supreme court pointed to the prior decisions of the Indiana court construing the statute in question as creating contractual rights. An examination of the Indiana act set forth in the footnotes to the opinion of the supreme court plainly shows, as the court well said, "that the word contract was not used inadvertently or in other than its usual meaning". The decision, holding that contractual rights existed, hinged primarily upon the construction of the statute and secondly upon the proposition that the amendatory act, excluding township districts in which petitioner had established her contractual rights, was not a proper exercise of the police power. The Indiana statute being materially different from the 1913 tenure law of this state, it follows that such decision is not adverse to the contention of appellants herein that no contractual rights were impaired in this case.

Justice Roberts, who spoke for the court in the Brand case, is also the author of *Phelps v. Board of Education,* 300 U. S. 319 (81 L. Ed. 674, 57 S. Ct. 483), wherein the court had under consideration the teachers' tenure law of New Jersey and the right of the legislature to amend the same with respect to the compensation of tenure teachers when the right to decrease com-

pensation was denied in the original tenure act. The New Jersey act is similar to that of this state in so far as tenure is concerned. The New Jersey court (*Phelps v. Board of Education,* 115 N. J. L. 310 (180 Atl. 220)) denying that the statute had created contractual rights, said:

"* * * That established a legislative status for teachers, but we fail to see that it established a contractual one that the Legislature may not modify. If the argument now made is sound, the act of 1909 is irrepealable as to any teacher holding his position by tenure at any time thereafter. A board of education is a public body, created by the Legislature, with certain powers conferred by statute. It is a municipal corporation, or at least a quasi municipal corporation, and, as such, subject to supervision and control by the Legislature. The act of 1933 is in purport and effect, though not so entitled, an implied partial repealer or amendment of the tenure act of 1909, and we are clear that it was well within the power of the Legislature. *The status of tenure teachers, while in one sense perhaps contractual, is in essence dependent on a statute, like that of the incumbent of a statutory office, which the Legislature at will may abolish, or whose emoluments it may change.* * * *" (Italics ours.)

The case was appealed to the United States supreme court and it was held that no contractual relations had been created. Note the distinction which the court makes in the Brand case between that and *Phelps v. Board of Education,* supra.

*Groves v. Board of Education,* 367 Ill. 91 (10 N. E. (2d) 403)—which is much in point—involved, among other things, the validity of legislation reducing the compulsory retirement age of school teachers. It was contended there, as here, that such enactment impaired the obligation of contracts and deprived the plaintiff

of due process of law. The court, having under consideration a tenure law similar to that of this state, said:

"The claim of appellants that their tenure of office became a fixed and vested right which neither the State nor the Board of Education could later deprive them of, by reason of the act of April 20, 1917, commonly known as the Otis Law, is likewise untenable. Their contention on this point is almost identical with the position of appellants in the recent case of Phelps v. Board of Education of the Town of West New York, 57 S. Ct. 483, * * *, decided on appeal March 1, 1937, by the United States Supreme Court."

Cases cited wherein school boards, in dismissing teachers, have improperly exercised authority under the statute are not in point. This case deals solely with the power of the legislature.

We conclude that the 1913 tenure law, upon which plaintiffs base their claim of contractual rights, does not, when considered in its entirety, clearly and plainly indicate an intention by the legislature to surrender the sovereign power of the state to alter or change its educational policy in the interest of public welfare.

■ Assuming, but not deciding, that plaintiffs acquired vested contractual rights under the 1913 tenure law, we think such private rights must yield to the public welfare when a different educational policy has been determined through the proper exercise of the police power. The rule is thus stated in *Treigle v. Acme Homestead Association*, 297 U. S. 189 (80 L. Ed. 575, 56 S. Ct. 408, 101 A. L. R. 1284):

"Though the obligations of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exertion of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive."

In 6 R. C. L. 347, it is said:

"All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power, because if the legislature had no power to alter its police laws when contracts would be affected, then the most important and valuable reforms might be precluded by the simple device of entering into contracts for the purpose of doing that which otherwise might be prohibited."

Counsel for respondents recognize these fundamental principles but assert that in the instant case there has been no proper exercise of the police power in that a legislative enactment requiring teachers to retire at the age of 65 years is arbitrary and unreasonable.

██ It is unquestionably the function of government to establish and maintain public schools. Indeed, the Constitution of Oregon, Art. VIII, Sec. 3, specifically commits to the legislative assembly the "establishment of a uniform and general system of the public schools". That public education and the control thereof is a proper subject for the exercise of the police power is beyond question. It is difficult to conceive of any legislative policy which more vitally affects the public welfare.

Relative to this phase of the case, the precise question is: Is the statutory enactment of 1935, making it compulsory for teachers to retire at the age of 65, reasonably adapted to the end to be attained, viz., the promotion of the public welfare? If so, it is a proper exercise of the police power and private rights must yield. If it has no such relation, it cannot impair the obligation of contracts.

██ The legislature, in the exercise of its sovereign power, has in effect said that compulsory retirement

of teachers who are 65 years of age tends to promote the general welfare of the public and is for the betterment of the public school system. Many reasonable-minded persons believe that there is danger of schools being loaded down with superannuated teachers who have lost their appeal to youth. It is, indeed, significant that the interveners, who are officials of the Affiliated Teachers' Council of Portland and who are interested in maintaining a high standard of efficiency in the schools, support the contention of defendants that the compulsory retirement provision was enacted for the purpose of increasing the efficiency of the teacher employees. Whether such legislation is wise is not for this court to determine. It is sufficient to say that we do not consider such compulsory retirement of teachers arbitrary or unreasonable: *Groves v. Board of Education,* supra. It is beside the question that the plaintiffs are efficient and well qualified to teach. Laws are not enacted to fit individuals. It is the average teacher of the age of 65 years that the legislature had in mind.

In our opinion, the sovereign power vested in the legislature to enact laws for the betterment of common schools is one which cannot be bartered away. The exercise of such power at one time does not mean that future legislatures may not, in the light of experience, declare a different policy. If such is not the law, there is no hope for progress and future legislators, in determining educational policies concerning the tenure of teachers, must follow in trodden paths. We see nothing in *State ex rel. v. Brand,* supra, to indicate that the compulsory retirement of teachers in the instant case is not a proper exercise of the police power.

Plaintiffs assert there is no reasonable basis for classification as made in Sec. 20 of the 1935 tenure act by requiring compulsory retirement of teachers of

the age of 65 years in school districts of 20,000 or more population, whereas in non-tenure districts teachers over 65 years of age are permitted to teach. Certainly the legislature has power to classify districts on the basis of population. The problems in large and small school districts are oftentimes materially different. Statutory regulations in one class of school districts might prove efficient whereas if applied to another district of less population they would be impracticable. In non-tenure districts the teachers are employed by written contract from year to year. The directors in such districts have ample opportunity to pass upon their qualifications and efficiency. To dismiss a teacher in a small district based upon a charge of inefficiency resulting from old age is one thing, whereas to conduct similar hearings in districts employing hundreds of teachers might well end in confusion and turmoil. The objection to the act really amounts to an attack upon the entire tenure act. The law is well settled that if there is any reasonable basis for classification which can be conceived, the discretion exercised by the law-making body is conclusive. It is only when the classification is unreasonable and arbitrary that courts will interfere.

■ There is no merit in the contention that plaintiffs have been denied equal protection of the law, as the compulsory retirement provision applies alike to all teachers within the same class.

The decree of the lower court is reversed. Each party will pay his own costs and disbursements.

BAILEY, J., not sitting.