Argued and submitted January 25, reversed and remanded for entry of judgment for defendants June 15, petition for review allowed December 1, 2011 (351 Or 401)

Neil JAMES,
*Plaintiff-Respondent,*

*v.*

CLACKAMAS COUNTY,
Jon Montay (official capacity),
Nancy Drury (official capacity),
Martha Schrader (official capacity),
Lynn Peterson (official capacity),
and Bill Kennemer (official capacity),
*Defendants-Appellants.*

Clackamas County Circuit Court
CV07040292; A143772

259 P3d 995

Susan Marmaduke argued the cause for appellants. With her on the brief were Edward S. McGlone, III, Clackamas County Counsel; and Jona J. Maukonen and Harrang Long Gary Rudnick P. C. With them on the reply brief was C. Robert Steringer.

Thomas K. Doyle argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Clackamas County and the individually named defendants, Clackamas County commissioners during the relevant time period, appeal from a limited judgment declaring that they breached contractual and statutory duties to plaintiff, a retired management-level employee of the Clackamas County sheriff's office, by reducing his retiree medical benefits. The parties agree that defendants' obligation to maintain plaintiff's benefits (and the benefits of other sheriff's office retirees) lasted only as long as the fund created for that purpose was sufficient to do so. Plaintiff maintains that such a fund exists and that it remains sufficient. The county maintains that the fund had been depleted by the time that plaintiff's benefits were reduced. The trial court agreed with plaintiff. We reverse.

The case was tried on stipulated facts. Over the past three decades, the county has established three different funds to provide medical benefits for various groups of retired employees of the county sheriff's office. The Peace Officers Fund was created in the 1980s pursuant to an agreement between the county and the peace officers' union to provide health insurance benefits to union-member retirees until they became eligible for Medicare. The county paid for the fund with contributions in the amount of one-half of one percent of the represented peace officers' base pay. The agreement stated that "benefits are contingent upon the availability of sufficient funding in said fund to pay for the same."

In 1985, the Clackamas County Board of Commissioners adopted Order 85-1375, creating the "Retiree Medical Benefits Trust Fund for Sheriff's Management Groups I and II" to provide health insurance benefits for retired members of the sheriff's management, or "command" staff; that fund was called the Command Officers Fund. The county commissioners adopted "Rules and Procedures" that were attached to the order as an exhibit. Paragraph 4 of the "Rules and Procedures" provided that the sheriff's office budget would be assessed an amount equal to one percent of the total command officers' compensation, which would be paid to the Command Officers Fund. Paragraph 5 stated that

"said benefits are contingent upon the availability of sufficient funding in said fund to pay for the same."

Plaintiff is a retired Clackamas County sheriff who was promoted to management level in 1988, after having worked at the sheriff's office for approximately 15 years. At the time of his promotion, he was informed of the retiree medical insurance benefits available to him through the Command Officers Fund.

In May 1989, as a result of increased medical insurance premium costs, the county commissioners unilaterally and voluntarily increased the county's contribution to the Command Officers Fund to four percent of command officers' total compensation for the remaining two months of the fiscal year and then increased the county's contribution to three percent thereafter. Over the next 11 years, that three percent contribution was sufficient to maintain the fund.

Plaintiff retired in December 1999 and began receiving medical benefits from the Command Officers Fund. Between fiscal year 2000-01 and fiscal year 2003-04, the cost of medical insurance premiums more than doubled. The increase outpaced the county's contribution and depleted the Command Officers Fund to less than $44,000 by the end of fiscal year 2003-04. Benefit costs for that year were $107,000. To prevent the fund from being completed depleted, the county—again, unilaterally and voluntarily—made a one-time transfer of $83,630 from the county's general fund to the Command Officers Fund to cover health insurance premiums for that year, but it also notified members that the fund would be exhausted within nine months. An independent actuarial study in April 2004 showed that, in order to continue to provide the same level of benefits, the county would need to increase its contribution to 4.68 percent of total payroll. By March 2005, the Command Officers Fund held only $4,000, which was not enough to cover one month's premiums.

The Peace Officers Fund was also seriously depleted. In early 2005, the county reached an agreement with the union and the sheriff's office to restructure health insurance retirement benefits for all employees by combining the two funds. Pursuant to that agreement, the Peace Officers Fund

and the Command Officers Fund were combined into a single fund known as the Sheriff's Officer Retiree Medical Fund (Retiree Medical Fund). The county then closed the Command Officers Fund and made a one-time, voluntary contribution of $150,000 to the Retiree Medical Fund.

Under the current benefit package, the county contributes two to two and one-half percent of union employees' salaries and three percent of command staff salaries to the Retiree Medical Fund, and it offers all eligible sheriff's office retirees a choice of two benefit plans, neither of which is as generous as the benefits formerly provided: Under one plan, the county continues to pay the retiree's entire premium, but there is a higher deductible; under the other plan, the retiree must contribute to the premium, but there is a lower deductible.

Until 2005, plaintiff's medical premiums were paid entirely out of the Command Officers Fund. Beginning in 2005, when that fund was merged with the Police Officers Fund to create the Retiree Medical Fund, plaintiff chose to retain the low deductible and pay part of the cost of premiums. Between July 1, 2005 and December 31, 2006, plaintiff paid $244.03 per month toward health insurance premiums for himself and his wife. In 2007, he paid $370.26 per month, and in 2008, he paid $336.58 per month. At the time of trial, the county was paying approximately two-thirds of the cost of premiums for plaintiff and his wife.

Plaintiff brought this action against the county, asserting breach of contract and two wage claims under ORS chapter 652. He also sued the individual commissioners in their official capacities for breach of fiduciary duty based on the same allegations and further sought injunctive relief, damages incurred in maintaining insurance coverage, prejudgment interest, costs and attorney fees under ORS 652.200(2), and penalty wages pursuant to ORS 652.150.

Plaintiff's breach of contract claim in his first amended complaint alleged that defendants' failure to provide plaintiff with the same medical plan he had through the Command Officers Fund when he retired constituted a violation of plaintiff's employment contract. Plaintiff further alleged that defendants breached their agreement of good

faith and fair dealing by intentionally failing to fund the Command Officers Fund at a level sufficient to provide the same medical plan that plaintiff held when he retired. Plaintiff's wage claims alleged that defendants violated ORS 652.120, ORS 652.140, and ORS 652.610 when they failed to provide him with medical benefits that were earned. Plaintiff sought payment of the wages, penalty wages, and reasonable attorney fees.

The court found that the Retiree Medical Fund had a balance of $328,350 for the fiscal year 2005-06 and that "[t]he merger of the [Command Officers Fund] with the [Peace Officers Fund] has created one fund that can adequately pay all insurance premiums to Plaintiff." The court entered a limited judgment declaring that, by failing to pay plaintiff's full premiums from the combined fund, the county breached its contract with plaintiff and violated ORS 652.610. The court enjoined the county from violating "Plaintiff's employment contract as set forth in the [Command Officers Fund] Rules and Procedures and Order No. 85-1375" and ordered the county to return plaintiff's benefits to the same level as of December 31, 2004. The court awarded no damages, statutory penalties, or attorney fees.[1] On appeal, defendants assign error to the trial court's entry of judgment for plaintiff on his breach of contract claim and his wage claim. We agree with defendants that the trial court erred, and we consequently reverse.

As an initial matter, the parties dispute whether the county's action was "legislative" in nature. *See Foster v. Clark*, 309 Or 464, 472, 790 P2d 1 (1990); *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 602-04, 601 P2d 769 (1979) (distinction between "legislative" and "administrative" matters is the distinction between making laws of general applicability, future effect, and permanent nature, on the one hand, as opposed to decisions implementing such general rules, on the other). How the county's action is

_____

[1] Plaintiff's complaint was captioned as an individual action, but he sought certification of a class composed of "all retired management retirees adversely affected by the County's change in the retiree health benefits." The case was tried as an individual action, but subsequently, after the filing of defendants' notice of appeal, the trial court granted plaintiff's motion for certification of a class as to all of plaintiff's claims. That ruling is not on appeal.

characterized could have an effect on how the contract is interpreted.

Most of the rules of construction that apply in general to the interpretation and effect of employment contracts apply as well to legislatively created employment contracts. *Watkins v. Josephine County*, 243 Or App 52, 58-59, 259 P3d 79 (2011). An employer's offer of an employment benefit amounts to an offer of a unilateral contract, and the employee accepts that offer by commencing or continuing employment. *McHorse v. Portland General Electric*, 268 Or 323, 331, 521 P2d 315 (1974) (long-term disability income); *Harryman v. Roseburg Fire Dist.*, 244 Or 631, 634-35, 420 P2d 51 (1966) (sick leave with cash value on termination); *Lauderdale v. Eugene Water and Electric Board*, 217 Or App 551, 177 P3d 13 (2008) (retirement health insurance benefits); *Horton v. Prepared Media Laboratory, Inc.*, 165 Or App 357, 361-62, 997 P2d 864, *rev den*, 331 Or 283 (2000) (severance benefits).

Unless the employment contract provides otherwise, an employer may prospectively modify or eliminate benefits that the employee has not already earned as compensation for his or her work, that is, benefits that have not vested, at the time of the elimination. *Furrer v. Southwestern Oregon Community College*, 196 Or App 374, 379, 103 P3d 118 (2004); *see also Fish v. Trans-Box Systems, Inc.*, 140 Or App 255, 259, 914 P2d 1107 (1996) ("[A]n employer may * * * modify the employment contract so long as the modification applies only prospectively." (Internal quotation marks omitted.)). The employer may not, however, unilaterally modify or revoke its benefit plan so as to deprive an employee of rights that have vested. *Lauderdale*, 217 Or App at 564-65; *Horton*, 165 Or App at 363; *see also Hughes v. State of Oregon*, 314 Or 1, 20, 838 P2d 1018 (1992) (employee's contractual interest in a vested employment benefit may not be "substantially impaired"); *Funkhouser v. Wells Fargo Corp.*, 224 Or App 308, 197 P3d 592 (2008). Those rules apply under any employment contract, statutory or otherwise. *See* 38 Op Atty Gen 1356, 1365 (1977) ("[Employee] pension plans, whether established by law or contract, create a contractually based vested property interest which may not be terminated by the employer, except prospectively. The employer offers payment of future pension benefits as part of compensation for work

currently performed. [Employees] accept and earn such future benefits by performing current labor.").

When an employment contract is legislatively created, a somewhat higher standard of proof is applicable to the determination of the existence and extent of the benefits under the contract. In *Campbell et al. v. Aldrich et al.*, 159 Or 208, 213, 79 P2d 257 (1938), the court stated:

> "[L]egislative enactments may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the state. *It is also equally well established that the intention of the Legislature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, must clearly and unmistakably appear.* The intention to surrender or suspend legislative control over matters vitally affecting the public welfare cannot be established by mere implication."

(Emphasis added.) As the court stated in *Strunk v. PERB*, 338 Or 145, 192 n 40, 108 P3d 1058 (2005), contractual rights can arise prior to the completion of the service necessary for a pension. The question is whether "the contract offer that the particular pension plan presents *contains* such a promise, *i.e.*, a promise that extends over the life of a covered member's service." *Id.* (emphasis in original). However, when the purported agreement is statutory, a promise will not be inferred unless the legislation "clearly and unambiguously" establishes such an intention. *Id.* at 192; *see also Watkins*, 243 Or App at 460.

The contract at issue in this case would appear to be legislative. It was passed by the county commissioners, acting in their quasi-legislative capacity. It expresses a policy decision, as opposed to implementing one that already exists. It is a statement of general applicability and future effect. *Foster*, 309 Or at 472; *Strawberry Hill 4 Wheelers*, 287 Or at 602-04. However, we need not decide that issue, because whether or not this is a legislatively created contract, we would reach the same conclusion: The county did not make a permanent guaranty of medical insurance premium benefits for retirees.

As noted, the facts regarding the history of the various funds and the reduction of health insurance benefits for

retirees are undisputed. Further, the parties have stipulated that Order No. 85-1375 establishing the "Retiree Medical Benefits Trust Fund for Sheriff's Management Groups I and II" and the county's "Rules and Procedures" created a contractual obligation. However, the parties dispute the nature of that obligation as well as whether the current fund should be treated as a separate fund or as a continuation of the Command Officers Fund. Our analysis begins and ends with the text of Order 85-1375 and the Rules and Procedures.

The county's original order creating the Medical Benefits Trust Fund provided: "BE IT HEREBY ORDERED THAT the Medical Benefits Trust Fund for Sheriff's Management Groups I and II Retirees be established subject to the rules and regulations on the attachment." The relevant "Rules and Procedures" provided, in part:

"1.    Sheriff's Members with ten (10) or more years of service * * * shall, upon retirement * * * have *provided to them and their eligible dependents the same medical plan they held when they retired, until employees become eligible for Medicare benefits.*

"* * * * *

"4.    The trust fund is funded by the Sheriff's Department budget at the rate of one percent (1%) of the covered Sheriff's members' compensation.

"5.    The County shall keep those funds as a separate fund for the purpose of funding the benefits described * * * for the benefit of those employees whether they are * * * or shall in the future be eligible to receive benefits under this Agreement. *It is understood that said benefits are contingent upon the availability of sufficient funding in said fund to pay for the same.*"

(Emphasis added.) As plaintiff contends, under paragraph 1 of the Rules and Procedures, retirees were entitled to "have provided to them and their eligible dependents the same medical plan they held when they retired, until employees become eligible for Medicare benefits." To that purpose, under paragraph 4, the county was obligated to provide funds of one percent of covered members' compensation. But the right to benefits was not absolute. By the unambiguous terms of paragraph 5, the medical insurance premium benefits

were contingent on the availability of sufficient funds "in said fund." Plaintiff does not dispute that condition or that the county contributed funding required by Order 85-1375. Rather, plaintiff's arguments are directed at demonstrating that the funds within "said fund" were sufficient.

Plaintiff contends that the fund created by Order 85-1375 was simply a generic reserve fund to pay medical benefits, whatever its name, which the county obligated itself to fund; that the county has never issued an order abolishing that fund; and that the Retiree Medical Fund, which currently is solvent, is "said fund" referred to in the rules and procedures. To similar effect, plaintiff asserts that if the Retiree Medical Fund is not literally the same fund, it is for all intents and purposes the same fund created by Order 85-1375, which, because of the merger of the Peace Officers Fund and the Command Officers Fund, is not depleted. In essence, plaintiff contends, the contingency of "insufficient funding" has not arisen, because the fund remains solvent.

Defendants respond that "said fund" can refer only to the specific "Medical Benefits Trust Fund for Sheriff's Management Groups I and II Retirees" established by Order 85-1375. Defendants' view is confirmed by the unambiguous text: "[S]aid benefits are contingent upon the availability of sufficient funding in said fund to pay for the same." "Said fund" can only refer back to the specific fund created by Order 85-1375—the "Medical Benefits Trust Fund for Sheriff's Management Groups I and II Retirees" that the county named the Command Officers Fund. *Black's Law Dictionary* 1453 (9th ed 2009) ("said" means "[a]foresaid; above mentioned"); *Webster's Third New Int'l Dictionary* 2000 (unabridged ed 2002) ("said" is a past participle of 'say,' meaning 'aforementioned'). The fund that plaintiff claims is "said fund"—the merged Retiree Medical Fund—was not even in existence when the term was employed and included in the order. Despite the county's contribution of money to the Command Officers Fund at and over the one percent that was required by Order 85-1375 and the rules and procedures, "said fund" became depleted, and no longer contained sufficient funds to provide "said benefits." At that point, the county's obligation to provide benefits on the same terms ended. Although the Retiree Medical Fund was initially

funded in small part ($4,000) from the money remaining in the Command Officers Fund, the Command Officers Fund no longer exists. As the parties stipulated, the county developed a new benefits package by combining funds from the Command Officers Fund and the Peace Officers Fund into a new fund, the Retiree Medical Fund. As the stipulation recites, "This resulted in the merging [*sic*] the two Funds into a *new* 'Sheriff's Office Retiree Medical Fund.'" (Emphasis added.) Thus, the Retiree Medical Fund is not the same fund that was created by Order 85-1375 and that became insolvent.

For the above reasons, we conclude that the trial court erred in determining that the county breached its agreement and the implied duty of good faith by failing to pay plaintiff the full coverage that plaintiff had under the Command Officers Fund out of the Retiree Medical Fund. Because the county did not have a legal obligation to pay plaintiff the full coverage that he had under the Command Officers Fund, we also conclude that the trial court erred in determining that the county violated ORS 652.610.

Reversed and remanded for entry of judgment for defendants.