No. 16 April 11, 2013 431

IN THE SUPREME COURT OF THE
STATE OF OREGON

Neil JAMES,
*Petitioner on Review*,

*v.*

CLACKAMAS COUNTY,
Jon Montay (official capacity),
Nancy Drury (official capacity),
Martha Schrader (official capacity),
Lynn Peterson (official capacity),
and Bill Kennemer (official capacity),
*Respondents on Review*.

(CC CV07040292; CA A143772; SC S059680)

On review from the Court of Appeals.*

Argued and submitted May 1, 2012; resubmitted January 7, 2013.

Thomas K. Doyle of Bennett Hartman Morris & Kaplan, Portland, argued the cause and filed the brief for petitioner on review.

Susan D. Marmaduke of Harrang Long Gary Rudnick P.C., Portland, argued the cause and filed the brief for respondents on review. With her on the brief were Jona J. Maukonen and John Cathcart Rake

Before Balmer, Chief Justice, and Kistler, Walters, Linder, Brewer, and Baldwin, Justices.**

BALMER, C. J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

—————————

    *  Appeal from the limited judgment dated October 9, 2009, of the Clackamas County Circuit Court, Eve L. Miller, Judge. 243 Or App 453, 259 P3d 995 (2011).

    ** Landau, J., did not participate in the consideration or decision of this case.

**BALMER, C. J.**

This case concerns the scope of Clackamas County's contractual obligation to provide health insurance benefits to command officer retirees of the Clackamas County Sheriff's Office. A contract between the county and command officers, including plaintiff, Neil James, required the county to use a particular fund to pay for a certain level of health insurance benefits to command officers after they retired. The contract added, however, that the obligation to pay benefits was "contingent upon the availability of sufficient funding in said fund to pay for the same." After plaintiff retired, the cost of health insurance premiums increased to the point where the fund was and would for the foreseeable future continue to be insufficient to pay for the benefits required. The county entered into a new contract with certain union employees to provide lesser benefits from a more stable fund, and plaintiff (a retired officer, not a union employee) also was provided those lesser benefits. Plaintiff brought an action against the county, asserting (among other claims) breach of contract. He maintained that the first contract required the county to pay him full health insurance benefits and argued that the contingency provision did not apply because of the creation of the new fund, which had sufficient money to pay for those benefits. The trial court entered judgment in favor of plaintiff, but the Court of Appeals reversed. *James v. Clackamas County*, 243 Or App 453, 259 P3d 995 (2011). On review, we conclude that the new fund is the product of a contract that is separate and independent from the earlier contract. Because the prior fund was insufficient to provide the agreed level of benefits, the county did not breach its contractual obligation to provide that level of benefits. Accordingly, we affirm the decision of the Court of Appeals.

We take the facts from the trial court's findings and from the uncontroverted evidence and concessions by the parties at trial. We construe all facts in favor of plaintiff as the prevailing party. *See* ORCP 62 F ("In an action tried without a jury, except as provided in ORS 19.415(3), the findings of the court upon the facts shall have the same force and effect, and be equally conclusive, as the verdict of a jury."); *Jacobs v. Tidewater Barge Lines*, 277 Or 809, 811, 562 P2d 545 (1977) ("We are required to accept as being

true all evidence and inferences therefrom in the light most favorable to the party who prevailed before the jury.").

Plaintiff was a long-time employee of the Clackamas County Sheriff's Office who retired in 1999 after 25 years of service. He began working for the Sheriff's Office as a "rank-and-file" employee, first as a deputy, then as a sergeant. In 1988, plaintiff was promoted to lieutenant, a position in the Sheriff's command staff.

In the early 1980s, the county and the union representing the rank-and-file employees of the Sheriff's Office negotiated a contract to provide health insurance benefits to members of the collective bargaining unit—the rank-and-file employees—from the time they retired until they qualified for Medicare. An employee would be entitled to those benefits only if he or she retired as a member of the bargaining unit. The benefits would be paid for from a fund created by county contributions (the Peace Officers Fund).

Command officers, who were not represented by the union, had no similar retirement benefit. Because most command officers were hired from the rank-and-file employees, that discrepancy discouraged regular employees from accepting command positions. To make command positions more attractive to rank-and-file employees, the Board of County Commissioners (board) undertook to provide similar post-retirement and pre-Medicare health insurance benefits to command officer retirees.

The terms and conditions of the county's obligation to pay those benefits were established by a 1985 order by the board. The board order stated that it was creating "the Medical Benefits Trust Fund for Sheriff's Management Groups I and II Retirees *** subject to the rules and regulations on the attachment." We follow the parties' convention and refer to that fund as the Command Officers Fund. The rules and regulations referred to in the board order provided that retirees would receive health insurance benefits equivalent to what they had had while employed.[1]

---

[1] Specifically, the rules and regulations state:

"1. [Qualifying retirees] shall, upon retirement ***, have provided to them and their eligible dependents the same medical plan they held when they retired, until employees become eligible for Medicare benefits."

Those benefits would be paid for by the Command Officers Fund and financed by the county regularly paying into the fund an amount equal to one percent of the compensation being paid to current command officers.[2]

The county's obligation to provide those health insurance benefits, however, was expressly contingent on the availability of sufficient funds to pay for them. Specifically, the relevant provision of the rules and regulations states:

> "5. The County shall keep those funds as a separate fund for the purpose of funding the benefits described * * *. *It is understood that said benefits are contingent upon the availability of sufficient funding in said fund to pay for the same.*"

(Emphasis added.) The parties agree that the 1985 order became a binding contract with those command officers who retired under its provisions.[3]

As early as 1989, the increased cost of health insurance created budgetary problems for the Command Officers Fund. By board order, the county temporarily increased the amount that it contributed to the Command Officers Fund to four percent of compensation for two months and permanently increased the contribution rate to three percent. At trial, the county conceded that the 1989 board order increasing contributions modified the original 1985 contract.

As noted, plaintiff retired in 1999. At the time of his retirement, he was not required to pay any premiums for his health insurance benefits; the premiums were paid entirely by the Command Officers Fund pursuant to the 1985 contract, as modified by the 1989 order.

Shortly after plaintiff retired, the cost of health insurance benefits for the Command Officers Fund and the Peace Officers Fund began to skyrocket. Between fiscal

---

[2] The relevant provision of the rules and regulations states:

"4. The trust fund is funded by the Sheriff's Department budget at the rate of one percent (1%) of the covered Sheriff's members' compensation."

[3] Because the parties have agreed that the 1985 order constituted a binding and enforceable contract, we express no view as to whether we agree or disagree with that conclusion or whether the county had the authority unilaterally to change or modify its terms.

year 2000-2001 and fiscal year 2003-2004, costs necessary to provide benefits for command officer retirees more than doubled, increasing from $51,000 to $107,000. Those increases outstripped the three-percent contribution being made by the county. By the beginning of the 2003-2004 fiscal year, the Command Officers Fund had a balance of less than $44,000, down from $126,421 just three years earlier.

Because of increasing costs, unless the county increased its contribution level above the amount set in the 1989 order, the Command Officers Fund would have been unable to pay benefits in February 2004. The county authorized a one-time payment of an additional $83,630 into the fund in addition to its three-percent contribution. Even that extra infusion was insufficient, however. By March 2005, the balance in the Command Officers Fund was only $4,000, which was not sufficient to pay the premium for that month's benefits.

At that point, given the terms of the order establishing the Command Officers Fund, there was no prospect that the fund would be sufficient to pay for the required benefits in the foreseeable future. A 2004 actuarial study of the fund concluded that, to maintain a balance in the fund sufficient to provide the required level of benefits for 10 years, the county would have to more than double its three-percent contribution rate and pay into the fund an annual amount equal to 7.89 percent of command officer payroll.

There were multiple causes of the financial problems with the Command Officers Fund. We have already noted one: the steadily increasing cost of health insurance benefits. Another problem, however, was the separation between the Command Officers Fund and the Peace Officers Fund. Most of the command officers began as rank-and-file employees, so most of the contributions that the county had made on their behalf during their careers had been paid into the Peace Officers Fund. Those contributions, however, were not transferred to the Command Officers Fund when the employee was promoted. At the same time, county contributions into the Command Officers Fund were limited because they generally occurred only in the last few years of an officer's service.

There also were financial problems with the Peace Officers Fund, although they were not as severe. Accordingly, the county and the union began negotiations to change the financing of both funds and the insurance benefits provided in order to make both funds more stable and to continue to provide health insurance benefits to all retirees. The resulting contract between the county and the union, entered into in 2005, provided: "The [Command Officers Fund] and the [Peace Officers Fund] will be combined into a single fund known as the Sheriff's Office Retiree Medical Fund." The stipulation of facts presented to the trial court characterized this as "merging the two [f]unds into a new 'Sheriff's Office Retiree Medical Fund.'" (For brevity, we will refer to the new fund as the Retiree Medical Fund.)

Under the 2005 contract, the county agreed to increase its contribution for rank and file employees to 2.5 percent of base salary, with contributions for command officers at the rate of three percent. The county would pay those amounts into the Retiree Medical Fund, together with a one-time contribution of $150,000. The contract provided that all retirees would be able to choose between either the medical plans then available to active employees (the terms of which were not identified in the contract itself) or "a new high deductible plan *** with $1,000 common deductible." If a retiree chose the high deductible plan, then the fund would pay 100 percent of the retiree's premiums (though not 100 percent of premiums for a spouse or covered children). If a retiree chose the other plan, then the retiree would be required to pay a portion of the premiums.

The county provided to plaintiff the health insurance benefits set out in the 2005 contract. Plaintiff did not choose the high deductible plan. As a result, plaintiff was required to pay a portion of his health insurance premiums. Plaintiff's share of premium payments varied from year to year: $244.03 per month in late 2005 and 2006, $370.26 per month in 2007, and $336.58 per month in 2008. During the period in question, the Retiree Medical Fund had sufficient money that it could have paid the full health insurance premiums for plaintiff and other existing command officer retirees.

In April 2007, plaintiff filed an action against the county and several individual defendants in their official capacities. Plaintiff's first amended complaint asserted four claims for relief: breach of contract, breach of fiduciary duty, and two separate statutory wage claims. Among other relief, plaintiff sought damages in the amount of the insurance premiums that he had paid and requested an injunction prohibiting defendants from breaching the 1985 contract. Plaintiff also sought to certify the case as a class action on behalf of all similarly situated retirees.

The trial court held a bench trial on January 21, 2009. After taking the matter under advisement, the court sent the parties a letter explaining its conclusion that the county had breached its 1985 contract with plaintiff. In relevant part, the letter stated:

> "* * * [T]he Court concludes [that the county] breached the contract with Plaintiff by failing to pay Plaintiff benefits from the Retiree Medical Fund. The merger of the [Command Officers Fund] with the [Peace Officers Fund] * * * has created one fund that can adequately pay all insurance premiums to Plaintiff. Since there are adequate funds available in the merged fund, the County can fulfill its contract with Plaintiff."

The trial court found it unnecessary to decide the claim for breach of fiduciary duty. In October 2009, the court entered a limited judgment in favor of plaintiff, memorializing its decision.[4]

The county appealed to the Court of Appeals. The county argued that its obligation to provide retirement benefits to command officers under the 1985 contract was, pursuant to the terms of the 1985 order and the applicable rules and regulations, contingent on the availability of funds in "said fund." Because the Command Officers Fund was entirely depleted, the county maintained that it

---

[4] Although the trial court's letter announcing its ruling referred only to breach of contract, the limited judgment ruled in favor of plaintiff both on the breach-of-contract claim and one of the statutory wage claims (under ORS 652.610). No party asserts on review that the statutory wage claim provides any independent basis for upholding the limited judgment, and both parties conceded below (plaintiff in the trial court, the county in the Court of Appeals) that the wage claim depended on the breach-of-contract claim. Accordingly, we do not consider the statutory wage claim separately.

had been relieved of its obligation to provide the level of health insurance benefits otherwise required by the 1985 contract. The county argued that the trial court had erred in concluding that the Retiree Medical Fund counted as "said fund" for purposes of the contingency provision in the 1985 contract.

Plaintiff agreed that the critical question was what "said fund" meant under the terms of the 1985 contract. Because the Retiree Medical Fund resulted from a merger of the Command Officers Fund and the Peace Officers Fund, plaintiff asserted that the contingency provision in the 1985 contract referred to the Retiree Medical Fund. For that reason, plaintiff maintained, the contingency provision did not relieve the county of its obligation to provide the full level of benefits required by the 1985 contract.

The Court of Appeals agreed with the county. The court noted that the contingency provision in the 1985 order unambiguously referred to "said fund," which could only refer to the Command Officers Fund created by that order. *James*, 243 Or App at 462. The Retiree Medical Fund did not exist when the 1985 order had been drafted, so it could not have been the "said fund" referred to by the contingency provision. *Id.* The insolvency of the Command Officers Fund meant that "the county's obligation to provide benefits on the same terms ended," and so "the Command Officers Fund no longer exists." *Id.* at 462-63. Furthermore, the parties' stipulation of facts specifically recognized that the Retiree Medical Fund, although the product of a merger of the Command Officers Fund and the Peace Officers Fund, was a "new fund." *Id.* at 463. For those reasons, the Court of Appeals concluded that the contingency provision had relieved the county of its obligation to pay the benefits prescribed by the 1985 contract and, accordingly, the trial court had erred in concluding that the county breached its contract by not paying the full coverage that plaintiff had under the Command Officers Fund out of the Retiree Medical Fund. *Id.*

On review, plaintiff challenges the Court of Appeals decision and presents two issues. First, plaintiff asserts that the Court of Appeals erred in holding that any triggering of

the contingency provision terminated the county's obligation to pay benefits. Even if the Command Officers Fund was briefly insolvent, plaintiff maintains, the county's obligation to provide 1985-level health insurance benefits was merely suspended; it resumed when the county created the Retiree Medical Fund. Second, plaintiff renews his contention that the Retiree Medical Fund qualifies as "said fund" for the purpose of evaluating whether the insufficient funding contingency provided for by the 1985 contract has been met. Because the trial court found that the Retiree Medical Fund contained enough money to pay 1985-level health insurance benefits to plaintiff (and similarly situated command officer retirees), he asserts, the trial court correctly concluded that the county had breached its contract.

Unless plaintiff is correct that the Retiree Medical Fund qualifies as "said fund" for purposes of the contingency provision of the 1985 contract, there is no need for us to reach plaintiff's first issue. Even if the insolvency of the Command Officers Fund suspended rather than terminated the contractual obligation, as plaintiff asserts, the undisputed facts at trial demonstrated that, by 2005, the Command Officers Fund was insufficient to pay the benefits provided for in the 1985 contract and that that insufficiency would continue indefinitely into the future. Unless the Retiree Medical Fund qualifies as the fund from which the 1985 contract benefits should be paid, the county did not breach its contractual obligation to pay 1985-level benefits; there was not sufficient funding in the Command Officers Fund to pay 1985-level benefits. Accordingly, we begin with the second question: whether "said fund" in the contingency provision of the 1985 contract refers to the Retiree Medical Fund.

Plaintiff's primary argument that "said fund" in the 1985 contract refers to the Retiree Medical Fund is based on an alleged concession by the county. Plaintiff maintains that the county conceded in the trial court that it had modified the contract in 2005 to make "said fund" refer to the Retiree Medical Fund. That argument relies entirely on a statement in a post-trial brief in which the county noted that a board order can be modified only by action of the board. The county went on to assert that the board had modified its

1985 order just twice: in 1989 when the board increased its contribution to the Command Officers Fund, and "again in 2004 [*sic*] when it merged the [C]ommand and [P]eace [O]fficer [F]unds."[5]

Plaintiff, however, takes that statement out of context. Although the county acknowledged adopting new board *orders* in 1989 and 2005 that affected retiree health benefits, the county did not concede that the board had modified the *contract*.[6] Moreover, plaintiff does not explain why we should ignore his own concession, made in the stipulation of facts, that the two merged funds constituted a "new" fund. The resolution of this case requires us to interpret the contracts at issue, not simply to pick and choose among those competing alleged "concessions."

In interpreting a contract, we seek to implement the intent of the parties to the contract by considering the contract terms in their context. *Anderson v. Jensen Racing, Inc.*, 324 Or 570, 575-76, 931 P2d 763 (1997) (citing cases). Specifically, we first consider the text of the contractual provision at issue in the context of the contract as a whole.

---

[5] The paragraph relied on by plaintiff reads as follows (italicized sentences mark portion quoted by plaintiff):

"Plaintiff argues that after he entered the command staff the contract was modified by the actions and statements of county employees so as to impose upon the county the obligation to provide benefits regardless of the balance in the fund. Such is not the case. Plaintiff is charged with the knowledge of the content of the Board order. *An order of the Board of Commissioners can only be modif[ied] by action of the Board. This was done in 1989 when the Board increased the amount to be paid into the command officer fund. It was done again in 2004 [sic] when it merged the command and peace officer funds.* At no other time has the Board taken such action. He could not reasonably rely upon any statements or actions of county employees that were contrary to the express terms of the order."

[6] The county made the statement at issue, quoted above, in the context of challenging plaintiff's assertion that the county's employees had modified the contract by their representations to him. The assertion that only the board could modify its prior orders is not the same thing as a concession that the board had modified its contract with plaintiff. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 148, 26 P3d 785 (2001) (modification of contract requires both mutual assent and consideration). Furthermore, context undermines the meaning that plaintiff seeks to attribute to the statement. In the same post-trial brief, the county specifically disputed plaintiff's claim that the Retiree Medical Fund had been substituted for the Command Officers Fund under the terms of the 1985 contract. "The new fund is not the old fund in different dress, but a totally new contract offered to deput[ies] and command staff as substitute performance when the purpose of the old contract could no longer be met."

*Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997). "If the [meaning of the disputed] provision is clear, the analysis ends." *Id.*[7] The interpretive issue in this case is the meaning of the term "said fund" as used in the contingency provision of the 1985 contract. We quote again the text of the contingency provision at issue here:

> "It is understood that said benefits are contingent upon the availability of sufficient funding in said fund to pay for the same."

Plaintiff essentially contends that "said fund" means any fund from which the county pays health insurance benefits for command officer retirees, such as plaintiff. We conclude that that interpretation is not correct. To the contrary, "said fund" refers to the fund described in the contract created by the 1985 order. That fund consisted of the original one-percent contribution, plus the later contributions and changes by the 1989 board order—the $83,000 one-time contribution, the four-percent contribution for two months, and the permanent change to a three-percent contribution. All of those contributions were made pursuant to the 1985 contract, as modified in 1989.

The words "said fund" in the 1985 contract, however, cannot reasonably be understood to refer to the fund created by a different contract that did not exist in 1985. The 2005 contract is not between the county and command officers, as was the 1985 contract. The 2005 contract is between different parties—between the union and the county— and the command officers were, at best, only third-party beneficiaries. The 2005 contract benefits different people than the 1985 contract—it provides health insurance benefits primarily to rank-and-file retirees, and command officer retirees are provided insurance benefits because the county wanted to provide them with some coverage. The 2005 contract provides for a different fund from which benefits will be paid—one that is composed of county

---

[7] The Court of Appeals noted that a higher standard of proof is used to determine the meaning of a contract created by legislation, but that court found it unnecessary to decide whether the 1985 contract fell within that classification. *See James*, 243 Or App at 460 (discussing cases). That issue has not been presented on review. Regardless, our disposition also makes it unnecessary for us to reach that question.

contributions equal to 2.5 percent of base salary for rank-and-file employees and three percent for command officer employees. And the 2005 contract provides for different health insurance benefits—benefits that are less generous than those granted by the 1985 contract. Moreover, the 2005 contract contains no express mention of the 1985 contract or its terms, benefits, or parties, other than a reference to combining the existing Command Officers Fund and Peace Officers Fund into a new Sheriff's Office Retiree Medical Fund.

In short, the 2005 contract was a separate, independent contract that addressed all necessary contractual terms. There was no legal basis for the trial court to conclude that "said fund" under the 1985 contract referred to a different fund under a different contract between different parties that provided for different benefits. The 1985 contract and the 2005 contract each form separate wholes. The provisions of the contracts are in no way dependent.

Nor can we accept plaintiff's argument that the 2005 contract modified the 1985 contract to make "said fund" refer to the new fund created by the 2005 contract. The modification of an existing contract requires both mutual assent and consideration. *Bennett v. Farmers Ins. Co.*, 332 Or 138, 148, 26 P3d 785 (2001). Here, the union—the party that entered into the 2005 contract with the county—was not a party to the 1985 contract. In addition, nothing in the 2005 contract indicates any assent by the county or by the officer retirees to a modification of the 1985 contract. There is no evidence that either the county or the union intended for the fund created by the 2005 contract to be used to provide 1985 levels of health insurance benefits to current command officer retirees. To the contrary, the 2005 contract contemplates that retirees will receive only the lesser benefits provided under that contract.

In summary, we conclude that the 1985 contract created a fund to provide insurance benefits to certain retirees and that it expressly made the obligation to pay the 1985 level of benefits contingent on the availability of "sufficient funding in said fund" to provide those benefits.

The source of that "funding," according to the contract, was the county's payment into the fund of one percent of compensation paid to current command officers, increased to three percent by the 1989 county board order. By March 2005, the Command Officers Fund did not have sufficient funds to pay the next month's insurance premium under the 1985 contract. Because the funding in the Command Officers Fund was not sufficient to provide the 1985 level of benefits, the county was not contractually obligated to provide those benefits. Accordingly, the county's failure to provide that level of benefits was not a breach of its contract.[8]

In conclusion, we hold that the 2005 contract is completely separate from the 1985 contract. Plaintiff does not claim that the county has breached its obligations under the 2005 contract. The county did not breach its obligations under the 1985 contract by failing to provide plaintiff the health insurance benefits referred to in that contract, and the trial court erred in concluding otherwise.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[8] For the reasons noted, we need not address plaintiff's argument that the inadequacy of the Command Officers Fund merely suspended the obligation to pay benefits under the 1985 contract without terminating it. Even if plaintiff is correct, there was no breach of contract in 2005. The event that excused the county from performing has existed continuously since March 2005. Whether the county has an obligation to continue to make contributions to the Command Officers Fund and whether the county could have an obligation to pay benefits from that fund, were it ever to become sufficient, are questions that are not before us.